Wayne BROWN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 15A01–0812–CR–566.

Court of Appeals of Indiana.

Sept. 10, 2009.

Transfer Denied Oct. 29, 2009.

Leanna Weissmann, Lawrenceburg, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

1. Ind.Code Ann. § 35–42–4–4(b)(2) (West, PREMISE through Public Laws approved and effective through 4/20/2009).

2. I.C. § 35–42–4–4(c).

3. The basic Lime Wire program is designed to allow computer users to share files with oth-

## OPINION

FRIEDLANDER, Judge.

Following a jury trial, Wayne Brown was convicted of three counts of Child Exploitation [1] as class C felonies and five counts of Possession of Child Pornography [2] as class D felonies. Brown was subsequently sentenced to a total aggregate term of fourteen years incarceration. On appeal, Brown presents four issues for our review:

1. Did the trial court abuse its discretion in permitting the State to amend the charging information?

2. Do Brown's convictions violate principles of double jeopardy?

3. Did the prosecutor engage in misconduct?

4. Did the trial court abuse its discretion in sentencing Brown?

We affirm.

On November 29, 2006, Task Force Agent Phillipe Dubord was working in an FBI office in Tampa, Florida, when he used an enhanced software version of the Lime Wire file-sharing program to search the internet in an effort to locate computer users in possession of and willing to share child pornography.[3] At approximately 11:00 a.m. on November 29, Dubord logged onto his computer and launched a Lime Wire search, entering search terms such as "qqaazz", "one-y-o" (meaning one-year-old), and "four-y-o" (meaning four-year-old), each known to be associated with child pornography file names. *Transcript* at 411.

ers and is available on-line for download to anyone searching for or looking to share files by key word, category, or name. The enhanced version created by the FBI allowed Agent Dubord to focus on one computer source at a time.

During his search, Dubord discovered three computers whose users were sharing child pornography with other users. Dubord identified the first computer by its Internet Protocol (IP) address and eventually linked the IP address to the residence of Sandra Brown,[4] located in Aurora, Indiana. Dubord determined that there were 718 pornographic images being disseminated from this IP address. Dubord remotely accessed this computer and downloaded ten of the files, each of which proved to contain child pornography. Dubord was familiar with some of the images he downloaded from his prior work on child pornography cases. Dubord forwarded the information and images he obtained to an FBI office located in New Albany, Indiana. The matter was eventually assigned to Indiana State Police Detective Tom Baxter. Based on the information received from Dubord, Detective Baxter obtained a search warrant for Sandra Brown's residence, which police executed on February 21, 2007.

During the February 21 search, police found a computer in the basement bedroom that was used by Brown.[5] The computer was running, but its monitor was off. When Officer Jennifer Barnes, a detective with the cyber crimes unit, turned the monitor on, she noted that the Lime Wire program was active, but minimized. When she maximized the application, the Lime Wire program showed files that were awaiting sources for downloading, including, among others, the file "10YOLSLUT-(15)". *State's Exhibit* 61. A preliminary analysis of the hard drive of Brown's computer revealed additional child pornography files. The police seized the computer, as well as CDs and DVDs later determined to contain thousands of images of child pornography.

Further investigation of the hard drive of Brown's computer led to the discovery of thousands of files containing pornographic images of children. These image files were located in a shared folder that was used as a repository for files to be shared on Lime Wire. Descriptions of some of the images found on Brown's computer follow: (1) State's Exhibit 75A depicts intercourse with a prepubescent child; (2) State's Exhibit 75B depicts a child performing fellatio; (3) State's Exhibit 75C depicts a naked, prepubescent child with her legs spread; (4) State's Exhibit 75D depicts a prepubescent child fondling a man's penis with her left hand; and (5) State's Exhibit 75E depicts a naked Asian child in chains and a collar, restrained by a naked, masked adult male.

On July 27, 2007, the State charged Brown with twenty-nine counts of child exploitation and five counts of possession of child pornography. On January 9, 2008, the State sought to amend the charging information and the trial court granted the request. On September 12, 2008, after the omnibus date and three days prior to trial, the State sought to amend the charging information by adding thirty-nine charges.[6] The State also sought to amend the information by linking specific images by filename to related counts. On September 15, 2008, the first day of the five-day trial, the trial court permitted the amendment. Ultimately, the court, upon Brown's request, ordered severance of the charges, and the

---

4. Sandra is Brown's mother. Brown was living in a basement bedroom in his mother's home.

5. During questioning, Brown admitted that the computer was his.

6. The thirty-nine additional counts stem from separate images of child pornography found as a result of the February 21 search of Brown's bedroom during which police seized Brown's computer and numerous CDs and DVDs.

jury trial proceeded only as to Counts 1 through 9. Counts 1 through 4 were for class C felony child exploitation, stemming from the dissemination of four separate images of child pornography on November 29, 2006. Counts 5 through 9 were for class D felony possession of child pornography, each of which were based on separate images discovered during the February 21 search of Brown's bedroom. Two days after the start of trial, the State again sought to amend Counts 7, 8, and 9 by changing the image filenames associated with those counts to correct apparent scrivener's errors and to add language regarding intent to Count 7. Over Brown's objection to including intent language in Count 7, the trial court allowed the amendment.

During trial, Brown maintained his innocence, asserting that many people had access to his basement bedroom and were permitted to use the computer where the pornographic images of children were found. Brown testified that one of his friends, specifically naming John Shepherd, among others, must have downloaded and shared the pornographic images. During an overnight break in the trial, the prosecutor telephoned Shepherd, who was identified as a defense witness, and told him, in violation of the separation of witnesses order, that Brown had accused Shepherd of downloading the pornographic images to Brown's computer. The prosecutor told Shepherd that he needed to come to court the following morning "to defend himself". *Transcript* at 1096. The following day, the prosecutor revealed his conduct to the court and admitted that it constituted a violation of the separation of witness order. Brown immediately moved for a mistrial, which the trial court denied.

At the conclusion of the evidence, the jury found Brown not guilty of Count 1 and guilty of Counts 2 through 9. On Counts 2, 3, and 4, the court sentenced Brown to eight years for each conviction. On Counts 5 through 9, the trial court sentenced Brown to three years for each conviction. Although the trial court ordered the sentences served consecutively, the trial court found that the sentences should be capped pursuant to the limitation found in Ind.Code Ann. § 35–50–1–2(c) (West, PREMISE through Public Laws approved and effective through 4/20/2009) for convictions arising out of a single episode of criminal conduct. Specifically, the court determined that the child exploitation offenses constituted a single episode of criminal conduct, and thus the sentences for those convictions could not exceed ten years. The trial court also determined that the possession of child pornography offenses constituted a single episode of criminal conduct, and thus the sentences for those convictions could not exceed four years. The trial court therefore imposed a total aggregate sentence of fourteen years.

1.

Brown argues that the trial court abused its discretion when it permitted the State to amend the charging information on September 15, 2008,[7] just prior to the start of trial, and again on September 17, 2008. In support of his argument, Brown asserts that the amendments were substantive, and thus, under the statute in effect at the time he committed the offenses, had to be made thirty days before the omnibus date.

■ Amendments to a charging information are governed by Ind.Code Ann. § 35–34–1–5 (West, PREMISE through

7. As noted above, the State filed this request on September 12, 2008, three days prior to     trial.

Public Laws approved and effective through 4/20/2009). Before addressing the merits of Brown's argument, we first address Brown's claim that the version of this statute in effect at the time he committed the instant offenses controls the outcome of our decision.[8] At the time Brown committed the offenses at issue I.C. § 35–34–1–5(a) permitted an amendment to the charging information at any time "because of any immaterial defect," and listed nine examples. Similarly, subsection (c) of the statute then in effect permitted "at any time before, during or after the trial, . . . an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant." I.C. § 35–34–1–5(c). Subsection (b), however, expressly limited the time for certain other amendments as follows:

(b) The indictment or information may be amended in matters of substance or form, and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant, at any time up to:

(1) thirty (30) days if the defendant is charged with a felony; or

(2) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors;

before the omnibus date.

I.C. § 35–34–1–5(b).

In January 2007, our Supreme Court handed down its opinion in *Fajardo,* in which it held that when an individual is charged with a felony, amendments to matters of substance are permissible only if made more than thirty days before the omnibus date, regardless of whether the defendant's substantial rights were prejudiced. The legislature quickly responded to *Fajardo* by revising I.C. § 35–34–1–5. Subsection (b) of that statute now reads as follows:

(b) The indictment or information may be amended in matters of substance and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant at any time:

(1) up to:

(A) thirty (30) days if the defendant is charged with a felony; or

(B) fifteen (15) days if the defendant is charged only with one

(1) or more misdemeanors;

before the omnibus date; or

(2) before commencement of trial;

if the amendment does not prejudice the substantial rights of the defendant. . . .

I.C. § 35–34–1–5(b). Under the revised subsection (b), the State can make an amendment to a matter of substance at any time before the commencement of trial so long as the amendment does not prejudice the defendant's substantial rights. The revised I.C. § 35–34–1–5 became effective on May 8, 2007.

In *Ramon v. State,* 888 N.E.2d 244 (Ind. Ct.App.2008), this court addressed the issue of whether the former version of the statute as interpreted by *Fajardo* or the current version, which was enacted during the pendency of Ramon's trial was applicable. In *Ramon,* we explained:

"The ex post facto clauses prohibit Indiana from enacting a law that 'imposes a punishment for an act which was

---

8. We note that Brown objected to the State's September 12, 2008 motion to amend the charging information. Brown did not argue in either his responsive motion or in open court that the law as set forth in *Fajardo v. State,* 859 N.E.2d 1201 (Ind.2007), was the basis for his objection. Brown's objection was based on his claim that the changes were substantive and that he was prejudiced thereby.

not punishable at the time it was committed; or imposes additional punishment to that then prescribed.' " *Goldsberry v. State*, 821 N.E.2d 447, 464 (Ind. Ct.App.2005) (quoting *Spencer v. O'Connor*, 707 N.E.2d 1039, 1042 (Ind.Ct.App. 1999), *trans. denied* ). The focus of the ex post facto inquiry is not on whether the legislative change causes a disadvantage. *Id.* Instead, we must determine whether the change "increases the penalty by which a crime is punishable" or "alters the definition of criminal conduct". *Id.*

We have previously stated that the constitutional prohibitions against ex post facto criminal sanctions require that criminal proceedings be governed by the statutory provision in effect at the time of the offense. *Settle v. State*, 709 N.E.2d 34 (Ind.Ct.App.1999). This suggests that in this case we should apply the version of I.C. § 35–34–1–5 in effect prior to May 8, 2007. We, however, have noted that the ex post facto clause " 'does not give a criminal a right to be tried, in all respects, by the law in force when the crime charged was committed.' " *Hayden v. State*, 771 N.E.2d 100, 102 (Ind.Ct.App.2002) (quoting *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977)), *trans. denied.* The clause is not designed "to limit legislative control of remedies and modes of procedure which do not affect matters of substance." *Id.* "Even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto." *Id.*

Our task here then is to determine whether I.C. § 35–34–1–5 and the General Assembly's revisions to that statute are procedural or substantive for purposes of the ex post facto provisions of both the Indiana and United States Constitutions. We have previously noted that " '[p]rocedural, adjective or remedial law is that portion of the law which prescribes *the method of enforcing a right or obtaining a redress* for the invasion of that right. Substantive law, on the other hand, is that portion of the law which *creates, defines and regulates rights.*' " *Hayden v. State*, 771 N.E.2d at 102 (quoting *State v. Fletcher*, 149 Ariz. 187, 717 P.2d 866, 870 (1986)) (emphasis in original). "An amendment is 'procedural in nature for purposes of the ex post facto doctrine, and may be applied to crimes committed before the effective date,' if it 'neither changes the elements of the crime nor enlarges its punishment.' " *Weaver v. State*, ·845 N.E.2d 1066, 1070 (Ind.Ct.App.2006) (quoting *Ritchie v. State*, 809 N.E.2d 258, 264 (Ind.2004), *cert. denied* 546 U.S. 828, 126 S.Ct. 42, 163 L.Ed.2d 76 (2005)), *trans. denied.*

Here, the revised version of I.C. § 35–34–1–5 that became effective on May 8, 2007 defines the procedures the State must follow to amend a charging information. The revised statute creates no new crimes, does not change the elements of any crime, and does not alter the sentencing statutes. Given the procedural function served by I.C. § 35–34–1–5, we conclude that the application of the revised I.C. § 35–34–1–5 in this case did not violate the ex post facto provisions of either the Indiana or United States Constitutions.

*Id.* at 251–52.

In *Hurst v. State*, 890 N.E.2d 88 (Ind. Ct.App.2008), *trans. denied,* we took the analysis a step further and found strong and compelling reasons exist for retroactive application. In *Hurst* we stated:

For over twenty years prior to *Fajardo*, case law regularly permitted amendments related to matters of substance as long as the substantial rights of the

defendant were not prejudiced, regardless of whether the amendments were untimely under I.C. § 35–34–1–5(b). *See Fajardo v. State*, 859 N.E.2d 1201 (listing numerous Supreme Court and Court of Appeals cases). On January 16, 2007, our Supreme Court changed course and held that the statute clearly required amendments of substance to be made not less than thirty days before the omnibus date, even if a defendant's substantial rights are not prejudiced by the amendment. The legislature immediately responded to *Fajardo* by amending the statute, effective May 8, 2007, to reflect the pre-*Fajardo* law (i.e., amendments of substance permitted anytime before trial so long as the defendant's substantial rights are not prejudiced). Thus, *Fajardo* was superseded by statute in less than four months. This prompt return to pre-*Fajardo* law indicates urgency in the legislature's desire to negate the effects of *Fajardo*. Though the legislature did not expressly provide for retroactive application of the amended statute, we are confident that this was the clear intent of such legislation. Therefore, the current statute applies in the instant case. *But see Fields v. State*, 888 N.E.2d 304 (Ind.Ct.App. 2008) (applying *Fajardo* without expressly determining whether strong and compelling reasons existed for deviating from the general rule that statutory amendments are applied prospectively). *Id.* at 95. On appeal, Brown asks us to reject our holding in *Ramon* and follow instead the holding of another panel of this court in *Fields v. State*, 888 N.E.2d 304. We decline Brown's request. Following the rationale of *Ramon* and *Hurst*, we will therefore proceed with our analysis of the

propriety of the amendments to the charging information under the current version of I.C. § 35–34–1–5.[9]

In the alternative, Brown argues that the amendments to the charging information were substantive in nature and that he was prejudiced thereby. Thus, even under the current version of the statute, Brown maintains that the amendments were not permissible.

We first consider the State's September 12 request for permission to amend the charging information. As noted above, the State can make an amendment to a matter of substance at any time before the commencement of trial so long as the amendment does not prejudice the defendant's substantial rights. I.C. § 35–34–1–5(b). "A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge". *Ramon v. State*, 888 N.E.2d at 252. Our Supreme Court has stated, "Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges." *Sides v. State*, 693 N.E.2d 1310, 1313 (Ind.1998), *abrogated on other grounds by Fajardo v. State*, 859 N.E.2d 1201. A defendant's substantial rights are not prejudiced if both (a) a defense under the original information would be equally available after the amendment, and (b) the accused's evidence would apply equally to the information in either form. *See McIntyre v. State*, 717 N.E.2d 114 (Ind.1999). And an amendment is one of substance only if it is essential to making a valid charge of the crime. *Id.*

With the September 12 amendment the State added file names to relate a specific image of child pornography to each

9. We recognize. that a member of this panel concurred in *Fields v. State*. After reading and considering the analysis in *Ramon*, which was handed down the same day as *Fields*, that member finds *Ramon* more persuasive.

charge.[10] For example, prior to the September 12 amendment, Count II provided, in pertinent part, as follows:

> On or about November 29, 2006, in Dearborn County, State of Indiana, Wayne Brown did knowingly disseminate, exhibit to another person, offer to disseminate or exhibit to another person, or send or bring into Indiana for dissemination or exhibition matter that depicts or describes sexual conduct by a child under eighteen (18) years of age, to-wit: exhibition of uncovered genitals intended to satisfy or arouse the sexual desires of any person.

*Appellant's Appendix* at 160. After the September 12 amendment, Count II provided as follows:

> On or about November 29, 2006, in Dearborn County, State of Indiana, Wayne Brown did knowingly disseminate, exhibit to another person, offer to disseminate or exhibit to another person, or send or bring into Indiana for dissemination or exhibition matter, *to-wit: file xcp2559.jpg*, that depicts or describes sexual conduct by a child under eighteen (18) years of age, to-wit: exhibition of uncovered genitals intended to satisfy or arouse the sexual desires of any person.

*Id.* at 442–43 (emphasis supplied). Each charge at issue was amended in the same manner. The class of the offenses and the essential elements of the crimes remained unchanged. Moreover, the State's amendment to each charge did not affect Brown's ability to argue or present evidence pertaining to his defense that someone else was responsible for the images found on and disseminated from his computer. Brown's defense remained equally applicable to all of the charges after the amend-

ments relating a specific image of child pornography to each charge. Brown has not established that the addition of specific file names relating specific images to a specific charge affected his substantial rights.

■ We now consider the amendment which the trial court permitted on September 17, the third day of trial. I.C. § 35–34–1–5(c) provides: "Upon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant." Brown objected to the State's request to add language regarding intent to Count 7, arguing that the amendment prejudiced his substantial rights. Prior to this amendment, the charge for Count VII provided:

> On or about February 21, 2007, in Dearborn County, State of Indiana, Wayne Brown did knowingly or intentionally possess a picture, drawing, photograph, negative image, undeveloped film, motion picture, videotape, digitized image or pictorial representation, to-wit: file LFSOO7–0103.jpg, that depicts or describes sexual conduct by a child who is less than sixteen (16) years of age, to-wit: exhibition of uncovered genitals.

*Appellant's Appendix* at 445. The September 17 amendment changed Count VII to provide, in pertinent part, as follows:

> On or about February 21, 2007, in Dearborn County, State of Indiana, Wayne Brown did knowingly or intentionally possess a picture, drawing, photograph, negative image, undeveloped film, motion picture, videotape, digitized image

---

**10.** We also note that this amendment added thirty-nine additional charges. Brown, however, was not tried on these additional charges and does not challenge the amendment in this regard on appeal.

or pictorial representation, to-wit: file lfs–0070103.jpg, that depicts or describes sexual conduct by a child who is less than sixteen (16) years of age, to-wit: exhibition of uncovered genitals, *intended to satisfy or arouse the sexual desires of any person.*

*Id.* at 532 (emphasis supplied).[11]

Again, Brown argues that the amendment was one of substance and that his substantial rights were prejudiced in that the addition of the intent language hampered his ability to present a defense. The charge before and after the amendment was possession of child pornography, and the essential elements of the crime remain unchanged. By adding the intent language, the State made the charging information conform to the statutory language defining sexual conduct in the context of the possession of child pornography statute and essentially increased its burden by adding an additional element to be proved by the State. We agree with the trial court's assessment that the amendment adding the intent language did not "materially change the substance of the offense" and did not affect the presentation of Brown's defense. *Transcript* at 561. We therefore conclude that the trial court did not abuse its discretion in allowing the September 17 amendment to include intent language to Count VII.

2.

Brown argues that his convictions violate federal and state prohibitions against double jeopardy. Brown was convicted of three counts of child exploitation for disseminating child pornography on November 29, 2006. The separate images upon which each charge was based were discov-

ered during the one-time, seven-minute, Lime Wire search by Agent Dubord that occurred on that date. Brown was also convicted of five counts of possession of child pornography, each of which was based on a separate and distinct image discovered on Brown's computer. On appeal, Brown argues that his convictions for child exploitation were based on the same evidence and that his convictions for possession of child pornography were based on the same evidence. Brown maintains that relating separate images to each count "does not differentiate these crimes sufficiently to overcome the risk of double jeopardy." *Appellant's Brief* at 21–22.

■■■ The Federal Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This constitutional provision includes protection from multiple punishments for the same offense. *Jones v. State,* 812 N.E.2d 820 (Ind.Ct.App.2004). To evaluate Brown's double jeopardy claim, we employ the well-established test announced in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under the *Blockburger* test, a defendant's conviction upon multiple offenses will not be precluded by double jeopardy principles under the federal constitution if each statutory offense "requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. 180.

I.C. § 35–42–4–4(b) provides, in pertinent part, as follows:

A person who knowingly or intentionally:

---

11. The State also amended the references to the file names relating specific images to each charge, correcting obvious scriveners' errors. With Count VII, we see that the file name was changed from "LFSOO7–0103.jpg" to "lfs– 0070103.jpg." *Id.* at 445, 532 respectively. Other charges were amended in a similar manner. Brown did not object to the amendment in this regard.

\* \* \*

(2) disseminates, exhibits to another person, offers to disseminate or exhibit to another person, or sends or brings into Indiana for dissemination or exhibition matter that depicts or describes sexual conduct by a child under eighteen (18) years of age;

\* \* \*

commits child exploitation, a Class C felony.

The crime of possession of child pornography is defined as follows:

A person who knowingly or intentionally possesses:

(1) a picture;

(2) a drawing;

(3) a photograph;

(4) a negative image;

(5) undeveloped film;

(6) a motion picture;

(7) a videotape;

(8) a digitized image; or

(9) any pictorial representation;

that depicts or describes sexual conduct by a child who the person knows is less than sixteen (16) years of age or who appears to be less than sixteen (16) years of age, and that lacks serious literary, artistic, political, or scientific value commits possession of child pornography, a Class D felony.

I.C. § 35–42–4–4(c).

As between the charges for child exploitation and possession of child pornography, there is no violation of the *Blockburger* test. Clearly, disseminating images of child pornography that are different from the images of child pornography in one's possession are distinct offenses that require proof of a different fact the other does not, i.e., the specific image related to each charge. There is no double jeopardy violation between the two groups of offenses (i.e., child exploitation and possession of child pornography) for which Brown was convicted.

▇ Brown also argues that his multiple convictions and punishments for child exploitation and multiple convictions and punishments for possession of child pornography violate double jeopardy tenets. Brown's argument in this regard presents an issue of statutory interpretation, which is an issue of law we review *de novo*. *Scuro v. State*, 849 N.E.2d 682 (Ind.Ct. App.2006), *trans. denied.* The classic test for multiplicity is whether the legislature intended to punish individual acts separately or to punish the course of action which they make up. *See Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306; *Am. Film Distribs., Inc. v. State*, 471 N.E.2d 3 (Ind.Ct.App.1984), *trans. denied.* Unless there appears in the statute a clear intent to fix separate penalties for the dissemination or possession of each image of child pornography, the issue should be resolved against turning a single transaction into multiple offenses. *Am. Film Distribs., Inc. v. State*, 471 N.E.2d 3 (citing *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955)). We recently reiterated this standard in *Robinson v. State*, 835 N.E.2d 518, 521 (Ind.Ct.App.2005), wherein we stated:

Legislative intent in enacting a statute is the key consideration when determining whether the double jeopardy clause protects against multiple punishments for the same offense under a particular statute. Specifically, the whole point of whether multiple offenses of the same statute are committed during a single transaction focuses on the definition of the crime involved. Thus, the touchstone of whether the double jeopardy clause is violated is the legislature's articulated intent.

(citing *Nield v. State,* 677 N.E.2d 79 (Ind. Ct.App.1997)) (citations omitted). "In analyzing double jeopardy claims based on multiple punishments, we utilize a method of statutory interpretation in which the court is asked to determine whether the legislature intended to impose separate sanctions for multiple offenses arising in the course of a single act or transaction." *Id.* at 522.

When faced with a question of statutory interpretation, we first examine whether the language of the statute is clear and unambiguous. *City of Carmel v. Steele,* 865 N.E.2d 612 (Ind.2007). If it is, we need not apply any rules of construction other than to require that words and phrases be given their plain, ordinary, and usual meanings. *Id.* Our Supreme Court has articulated that, "[t]he primary purpose in statutory interpretation is to ascertain and give effect to the legislature's intent." *State v. Oddi–Smith,* 878 N.E.2d 1245, 1248 (Ind.2008). The statute itself is the best evidence of legislative intent, "and we strive to give the words in the statute their plain and ordinary meaning." *Id.* We construe statutes only where there is some ambiguity which requires construction. *Grody v. State,* 257 Ind. 651, 278 N.E.2d 280 (1972). The plain meaning of the statute, if it has one, must be given effect. *Id.*

■■■ We first consider Brown's multiple convictions for child exploitation. Under I.C. § 35–42–4–4(b)(2), it is a violation of the law to "knowingly or intentionally . . . disseminate[ ] . . . matter that depicts . . . sexual conduct by a child under eighteen (18) years of age. . . ." As used in this statute, "matter" means:

(1) any book, magazine, newspaper, or other printed or written material;

(2) any picture, drawing, photograph, motion picture, digitized image, or other pictorial representation;

(3) any statue or other figure;

(4) any recording, transcription, or mechanical, chemical, or electrical reproduction; or

(5) any other articles, equipment, machines, or materials.

Ind.Code Ann. § 35–49–1–3 (West, PREMISE through Public Laws approved and effective through 4/20/2009). The legislature's use of the word "any", which could mean one or more items, suggests a lack of restriction or limitation. This, coupled with a listing of objects in the singular that constitute "matter", e.g., "book," "picture", etc., further indicates the legislature's intent to criminalize as a distinct occurrence the dissemination of each book or picture. We therefore conclude that the plain language of the statute evidences the intent of the General Assembly to make dissemination of each book or picture or other "matter" depicting sexual conduct of a child under eighteen years of age a separate and independent crime. *See Commonwealth v. Davidson,* 595 Pa. 1, 938 A.2d 198, 219 (2007) ("[e]ach use of a minor to create a visual depiction of child pornography constitutes a separate and distinct abuse of that child, and thus represents an individual violation of the statute").[12]

It is not difficult to discern the legislature's intent to criminalize dissemination of each book or picture. Child pornography is not a victimless crime. *United States v. Yuknavich,* 419 F.3d 1302 (11th Cir.2005). The creation of each image of child pornography victimized the individual child

---

12. Other jurisdictions have adopted a similar analysis. *See State v. Rhoades,* 690 N.W.2d 135 (Minn.App.2004); *State v. Cobb,* 143 N.H. 638, 732 A.2d 425 (1999); *State v. Martin,* 674 N.W.2d 291 (S.D.2003). *But see, United States v. Reedy,* 304 F.3d 358 (5th Cir.2002); *Girard v. State,* 883 So.2d 717 (Ala.2003).

and subjected the child to psychological and physical harm.

We further note that those (like Brown) who view and/or make available to others child pornography harm the individual children depicted in several ways: (1) by perpetuating the abuse initiated by the creator of the material; (2) by invading the child's privacy; and (3) by providing an economic motive for producers of child pornography. *United States v. Norris*, 159 F.3d 926 (5th Cir.1998). As has been acknowledged before, the dissemination of child pornography exacerbates and continues the exploitation and victimization of the individual child. *See New York v. Ferber*, 458 U.S. 747, 759, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) ("the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation"); *United States v. Sherman*, 268 F.3d 539, 545 (7th Cir.2001) (even a "passive consumer who merely receives or possesses the images directly contributes to this continuing victimization.").

Moreover, "the recipient may be considered to be invading the privacy of the children depicted, directly victimizing these children." *United States v. Norris*, 159 F.3d at 930. Each time Brown viewed and/or disseminated an image of child pornography, he violated each child's "individual interest in avoiding the disclosure of personal matters." *United States v. Sherman*, 268 F.3d at 546.

Finally, it seems clear that the child pornography industry would not exist but for patrons such as Brown. *See United States v. Boos*, 127 F.3d 1207, 1210 (9th Cir.1997) (recognizing that children were " 'injured' (both physically and psychologically) as a result of [the defendant's] patronage of the porn industry"); *United States v. Tillmon*, 195 F.3d 640, 644 (11th Cir.1999) ("[a]lthough an argument can be made that the production of child pornography may be more immediately harmful to the child involved, the dissemination of that material certainly exacerbates that harm"); *United States v. Norris*, 159 F.3d at 930 (suggesting that it may be "impossible to determine whether child pornographers or consumers of child pornography were initially responsible for the creation of the child pornography industry.... Neither could exist without the other.").

In summary, we hold that charging, trying, convicting, and punishing Brown for multiple counts of child exploitation for each instance of dissemination of each singular image of child pornography was not unlawful under the statute. In other words, the dissemination of each image of child pornography was a separate crime supported by different facts, i.e., the specific, singular image so disseminated. We therefore conclude that there was no violation of the Federal Double Jeopardy Clause because Brown was not punished multiple times for the same act.[13]

---

**13.** Brown cites four cases in support of his argument that multiple punishments for child exploitation and possession of child pornography violate principles of double jeopardy. *See Scuro v. State*, 849 N.E.2d at 687 (holding "a defendant may not be convicted of more than one count of dissemination of matter harmful to minors based on one occurrence, even if there was more than one victim"); *Adams v. State*, 804 N.E.2d 1169, 1176 (Ind.Ct.App. 2004) ("the sale of four videotapes to a detective ... surely constituted but one act of dis-

tribution of obscene matter."); *Am. Film Distribs., Inc. v. State*, 471 N.E.2d 3 (holding that the showing of four pornographic films on one occasion constituted but one exhibition, and thus, defendant's multiple convictions violated double jeopardy); *Porter v. State*, 440 N.E.2d 690 (Ind.Ct.App.1982) (holding that sale of two obscene magazines to one detective in one transaction and sale of two obscene films to another detective in another transaction could result in only one conviction for each separate transaction).

Brown makes the same argument with respect to his multiple convictions for possession of child pornography. As set forth above, the crime of possession of child pornography is defined as follows:

A person knowingly or intentionally possess:

(1) a picture;

(2) a drawing;

(3) a photograph;

(4) a negative image;

(5) undeveloped film;

(6) a motion picture;

(7) a videotape;

(8) a digitized image; or

(9) any pictorial representation;

that depicts or describes sexual conduct by a child who the person knows is less than sixteen (16) years of age or who appears to be less than sixteen (16) years of age, and that lacks serious literary, artistic, political, or scientific value commits possession of child pornography, a Class D felony.

I.C. § 35–42–4–4. Our analysis with regard to multiple convictions for child exploitation applies equally to the propriety of multiple convictions under I.C. § 35–42–4–4(c). As with the crime of child exploitation, the legislature defined the crime of possession of child pornography listing objects in the singular, e.g., "a photograph", "a digitized image", etc. This conveys the legislature's clear intent to make the possession of each photograph or digitized image a distinct occurrence of offensive conduct in violation of the statute. The same policy reasons discussed above equally apply as well. Indeed, we have expressly noted that "the purpose of [I.C. § 35–42–4–4(c) ] is to protect children from exploitation." *Bone v. State*, 771 N.E.2d 710, 717 (Ind.Ct.App.2002). We therefore find that multiple convictions and punishments for possession of child pornography distinguished only by the image so possessed do not violate federal double jeopardy principles.

We now turn to Brown's claim under the Indiana Constitution. The double jeopardy clause in the Indiana Constitution is embodied in article 1, section 14, and provides, "No person shall be put in jeopardy twice for the same offense." Our Supreme Court has concluded this provision was intended to prohibit, among other things, multiple punishments for the same actions. *Richardson v. State*, 717 N.E.2d 32 (Ind.1999). Our analysis under this provision involves dual inquiries under what have come to be known as the "statutory elements test" and the "actual elements test." *Davis v. State*, 770 N.E.2d 319, 323 (Ind.2002). The statutory elements test is the same test enunciated in *Blockburger*. *Robinson v. State*, 835 N.E.2d 518. Under the actual elements test, multiple convictions are prohibited if there is " 'a reasonable possibility that the evidentiary facts used by the fact-finder to establish the elements of one offense may also have been used to establish the essential elements of a second challenged of-

The key difference between this case and the cases upon which Brown relies is that in each of Brown's cited cases, the analysis is focused on a different statute found under a different article in the Indiana Code—i.e., obscenity and pornography crimes. We think the statute at issue in this case is fundamentally different in its nature and in the class of persons it was created to protect. To be sure, the crimes herein are defined as "child exploitation" and "possession of child pornography." Further, the manner in which the legislature defined these crimes demonstrates its clear intent to protect children and individual victims of child pornography. The statute's purpose is clear—to protect individual children. To the extent our analysis conflicts with any of the cases cited by Brown, we expressly decline to follow their rationale.

fense.'" *Davis v. State,* 770 N.E.2d at 323 (quoting *Richardson v. State,* 717 N.E.2d at 53).

We have already concluded that there is no double jeopardy violation under the *Blockburger* test for either group of crimes. That is, the legislature clearly intended to allow for multiple convictions and punishments for the crimes of which Brown was convicted. Thus, there is no violation of the statutory elements test. We thus consider whether multiple convictions are prohibited under the actual evidence test. We must examine the evidence presented at trial and determine whether each challenged offense was established by separate and distinct facts. *Robinson v. State,* 835 N.E.2d 518. Here, we conclude that they were. For each child exploitation conviction and for each possession of child pornography conviction, the State presented evidence of a separate and distinct image of child pornography. Thus, although much of the evidence to prove the elements of each group of crimes overlapped, each conviction was based on a separate and distinct fact that was not used to support any other conviction. We therefore find no double jeopardy violation under the Indiana Constitution.[14]

Brown also argues that multiple punishments disallows reformation as provided for in the Indiana Constitution. Brown points to article 1, section 18 of the Indiana Constitution, which provides: "The penal code shall be founded on the principles of reformation, and not vindictive justice." Brown maintains that allowing his multiple convictions for child exploitation and multiple convictions for possession of child pornography to stand "does not allow for rehabilitation" and "create[s] the false sense that a defendant is a career criminal beyond rehabilitation." *Appellant's Brief* at 26. We are unpersuaded by Brown's novel reasoning. As we have noted above, the language used by the legislature in defining the crimes at issue reflects the legislature's intent to provide for multiple convictions and punishments for the crimes Brown was found to have committed.

Moreover, we note that there are limitations within the sentencing statutes that prevent excessive punishment in cases such as this. As noted above and discussed in more detail below, the trial court found the child exploitation convictions, which were based on the dissemination of three separate images of child pornography, constituted an episode of criminal conduct.[15] The sentence for the three class C felony convictions was therefore capped at ten years. The trial court also concluded that the multiple convictions for possession of child pornography, each of which was based on separate images of child pornography found on Brown's computer, constituted an episode of criminal conduct. Thus, the sentence on all five convictions was limited to four years. The limitation on sentencing imposed for an episode of criminal conduct prevents excessive punishment.

Contrary to Brown's stated concern, we do not think that allowing multiple charges, convictions, and punishments provides an incentive to the State to excessively prosecute. Brown assert that with

---

14. Brown also argues that his multiple convictions for each group of offenses are prohibited by the continuing crime doctrine. Given our conclusion that the legislature demonstrated its intent to allow for multiple prosecutions, convictions, and punishments for these groups of offenses, the continuing crime doctrine is inapplicable.

15. An episode of criminal conduct means "offenses or a connected series of offenses that are closely related in time, place, and circumstance." I.C. § 35-50-1-2(b).

no boundaries to its decision on what charges to file, he could conceivably be faced with 18,000 convictions and sentences based on the number of images of child pornography found in his possession. We think the limitation on sentencing for an episode of criminal conduct removes any incentive to charge in the manner Brown suggests. To prosecute Brown for each image in his possession would serve to be an enormous waste of time, money, and judicial resources, especially when the maximum sentence to be imposed is limited, and, as in this case, already reached.

In summary, we conclude that Brown's multiple convictions for child exploitation and multiple convictions for possession of child pornography do not violate double jeopardy tenets of either the federal or state constitutions.

### 3.

■ Brown argues that the prosecutor's conduct during trial subjected him to grave peril. Specifically, Brown argues that the prosecutor's violation of the separation of witness order hampered his defense. On the fifth day of trial, the prosecutor informed the court that he called a defense witness the previous night and informed the witness of Brown's testimony suggesting that the witness downloaded the pornographic images to Brown's computer. Once made aware of the prosecutor's actions, Brown moved for a mistrial, which the trial court denied. The specific disclosure and objection follow:

[PROSECUTOR]: Your Honor, um, the State inadvertently, uh, uh, I believe disclosed some contents of testimony from, um, yesterday's hearing. The State after yesterday's hearing had been in contact with a witness that was named, um, for the Defense, the Defense had made him available, um, at some point during this week, um, I'd spoke [sic] to him and he had, um, give [sic] us

some information I thought was pertinent and I'd taken his number, um, at the close of Mr. Brown's testimony. After Mr. Brown had accused Mr. Shepherd, had in fact indicated to Mr. Shepherd previously that I thought I[sic] that might occur, to, to know what his response would be as far as, um, did he have the, any motive or opportunity to commit such an offense, um, after yesterday's testimony, it'd been a long day I called, um, Mr. Shepherd and I did confirm that Mr. Brown had in fact accused him and, um, that he should probably, I think, um, and in speaking to [defense counsel], I think we, if my memory was refreshed, I believe that I actually said, you should probably be here to defend himself [sic], um, and told him to be here at 8:30. It was in part [defense counsel] had had trouble getting some of these witnesses here. So I wanted to make certain he was here, um, in case I had intended to call him. And, um, I had forgotten that what I had disclosed was, I didn't make the connection, it was inadvertent, it wasn't intentional, I didn't realize that what I'd just did [sic] was violate the, uh, Motion to Separate, because I'd disclosed the content of actual testimony, I, uh, came forward to the Court and to [defense counsel] this morning. I do apologize to both Defense counsel and the Court. I did not intend to violate the Motion to, to Separate or disclose information that had occurred in the course of the trial, but I did in fact do that and I thought I should raise that for the record.

COURT: Ok. And, [defense counsel], uh, based on that, um, what did you want to present just for the record?

[DEFENSE COUNSEL]: Um, your Honor based on the violation of the Motion, the violation of the Order for Separation of Witnesses, the Defendant is

asking that the Court to grant a mistrial, uh, in this cause, um, I understand and believe the representation by [the prosecutor] that this may have happened inadvertently, I acknowledge that, uh, Mr., uh, Shepherd was named in other discovery materials in the case, prior to this and it may have been those discussions, but I think that, uh, by advising him of the content of testimony before hand that does have an impact on my clients [sic] right to a fair trial and I feel obligated to make a motion your Honor. COURT: Ok, um, the Court is going to deny that motion at this time. The Court is finding from the testimony that has been presented that it appears, um, from, uh, the plan for the case was that it would be indicated that others, um, and would be indicated that they would be responsible for this. So I don't think this was totally new information that came from the Defendant's testimony, um, and we're going to place your objection or your motion for the mistrial on the record, uh, but for the reasons, um, that I do not believe this was totally new information that just erupted from trial and that, uh, this was, um, apparent to the Court from testimony that has been given to date that these were issues that had been present during the entire investigation and, um, is not going to find that this is a material issue such that it would cause, the, um requirement of a mistrial . . . .

*Transcript* at 1095–99. Brown now claims that he is entitled to a new trial on grounds of prosecutorial misconduct.

In reviewing a properly preserved claim of prosecutorial misconduct, we determine whether the prosecutor engaged in misconduct, and if so, whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. *Cooper v. State,* 854 N.E.2d 831 (Ind.2006). The gravity of peril turns on the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Id.*

The State admits that the first element is satisfied. The prosecutor admitted his misconduct to the court immediately the following day when he informed the court that he had contacted a defense witness and told that witness that Brown had accused him of committing the crimes. Thus, all that needs to be decided is whether the prosecutor's misconduct subjected Brown to grave peril.

The basis of Brown's argument that he was subjected to grave peril follows:

Here, the prosecutor's actions in contacting the defense witness Brown believed to have committed the crime, effectively deprived Brown of the benefit of Shepherd's testimony. Though Shepherd did end up testifying at trial, he did so after having a night to contemplate how best to respond to the accusation and protect his own interests. If he were the guilty party, he was given time to reflect and potentially even manufacture answers to the defense attorney's questioning.

*Appellant's Brief* at 32. Brown maintains that the peril was compounded by the fact that there was no direct evidence of guilt.

Other than mere speculation that Shepherd would have testified differently but for being informed by the prosecutor of the contents of Brown's testimony, Brown has failed to demonstrate that he was placed in a position of grave peril by the prosecutor's actions. As Brown notes, Shepherd testified and he was given the opportunity to question him in light of Brown's testimony. There is no indication in the record that Shepherd, with or without the phone call from the prosecutor,

was going to accept responsibility or that he manufactured answers to defense counsel's questions. Brown has not shown that Shepherd's testimony was affected or that the jury was impacted in any way by the prosecutor's misconduct.

We further note the substantial evidence supporting Brown's convictions. When the police searched Brown's residence they discovered a computer, which Brown admitted was his, with child pornography on it, as well as numerous discs containing child pornography scattered about Brown's bedroom. At the time of the search, only Brown and his mother were home and the Lime Wire file sharing program was up and running, although the monitor was not on and the application was minimized. Brown has not met his burden of showing that he was harmed or placed in a position of grave peril.

### 4.

Brown challenges the sentence imposed by the trial court, arguing (1) that the trial court abused its discretion in imposing consecutive sentences and (2) that his sentence is inappropriate. As noted above, the trial court sentenced Brown to the maximum term of eight years on each of his three convictions for class C felony [16] child exploitation and to the maximum term of three years on each of his five class D felony [17] possession of child por-

nography convictions. The trial court ordered the sentences served consecutively. The trial court also found, however, that Counts 2 through 4 constituted a single episode of criminal conduct and that Counts 5 through 9 constituted a single episode of criminal conduct. The court thus, pursuant to I.C. § 35–50–1–2(c),[18] capped Brown's aggregate sentence for the three class C felonies at ten years and capped his aggregate sentence for his five class D felonies at four years. The trial court therefore imposed a total aggregate sentence of fourteen years.

Brown first argues that the trial court abused its discretion in imposing consecutive sentences. It is well settled that sentencing decisions, including the decision to impose consecutive sentences, are within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482 (Ind.2007), *clarified on reh'g*, 875 N.E.2d 218. A trial court is required to state its reasons for imposing enhanced or consecutive sentences. *Creekmore v. State*, 853 N.E.2d 523 (Ind.Ct.App.2006). A single aggravating circumstance may support the imposition of consecutive sentences. *Id.* (citing *Smylie v. State*, 823 N.E.2d 679 (Ind.2005)). So long as the sentence imposed is within the statutory range, the trial court's sentencing determination will be reversed only for an abuse of

---

**16.** Ind.Code Ann. § 35–50–2–6 (West, Premise through 2008 2nd Regular Sess.) ("[a] person who commits a Class C felony shall be imprisoned for a fixed term of between two (2) and eight (8) years, with the advisory sentence being four (4) years").

**17.** I.C. § 35–50–2–7 (West, Premise through 2008 2nd Regular Sess.) ("[a] person who commits a Class D felony shall be imprisoned for a fixed term of between six (6) months and three (3) years, with the advisory sentence being one and one-half (1 1/2) years").

**18.** Subsection (c) provides that "except for crimes of violence, the total of the consecutive

terms of imprisonment ... to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted." The advisory sentence for a class B felony is ten years (*see* I.C. § 35–50–2–5 (West, Premise through 2008 2nd Regular Sess.)) and the advisory sentence for a class C felony is four years (*see* I.C. § 35–50–2–6 (West, Premise through 2008 2nd Regular Sess.)).

that discretion. *Anglemyer v. State*, 868 N.E.2d 482. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

In its sentencing order, the trial court noted Brown's criminal history, consisting of three prior felonies and three probation violations, outweighed the sole mitigating factor identified by the court, that being that Brown had provided support for his two minor children. Brown maintains that the court's findings do not support the imposition of both the maximum and consecutive sentences.

We first note that by application of the sentencing limitation contained in I.C. § 35–50–1–2, Brown received a sentence reduced to a much greater extent than would have been the case if the sentences imposed had been maximum, consecutive sentences. To be sure, Brown received an aggregate sentence of fourteen years instead of the thirty-nine years he would have received but for the sentencing limitation. With this caveat in mind, we now consider Brown's argument that the trial court abused its discretion in ordering the sentences served consecutively.

Brown's argument in this regard is that his criminal history is unrelated to the current offenses and does not by itself support maximum, consecutive sentences. In support of his argument, Brown directs us to *Harris v. State*, 897 N.E.2d 927 (Ind.2008). The *Harris* Court found the trial court's sentencing statement inadequately explained the sentence imposed. The Court thus exercised its authority under Ind. Appellate Rule 7(B) and modified the defendant's sentence in accordance with the nature of the offense and the character of the offender. In considering the defendant's criminal history, the *Har-*

*ris* Court noted that the significance thereof varies on the gravity, nature, and number of prior offenses as they relate to the charge at issue. *Id.* The Court found that the defendant's convictions for child molesting were "manifestly different in nature and gravity from the previous convictions," which consisted of thefts and numerous traffic violations. *Id.* at 930. The Court concluded that, although not inconsequential, the defendant's prior convictions were not significant aggravators in relation to the class A felony child molesting convictions. On balance, the Court concluded that the aggravating factors did not justify enhanced and consecutive sentences. The Court thus modified the defendant's sentence, ordering the sentences served concurrently.

Brown's reliance on *Harris* in arguing abuse of discretion is misplaced. As noted above, the Court was not engaging in an abuse of discretion analysis, but rather its discussion of the defendant's criminal history was part of its evaluation of the defendant's character in determining an appropriate sentence. Under our sentencing scheme, "the trial court no longer has any obligation to 'weigh' aggravating and mitigating factors against each other when imposing a sentence.... [Thus,] a trial court can not now be said to have abused its discretion in failing to 'properly weigh' such factors." *Anglemyer v. State*, 868 N.E.2d at 491. Brown does not argue that the trial court could not consider his criminal history as an aggravating circumstance; Brown's argument is simply that the trial court afforded too much aggravating weight to his criminal history. Brown's recourse is to challenge his sentence as inappropriate. *See id.*

▮ We have the constitutional authority to revise a sentence if, after consideration of the trial court's decision, we conclude the sentence is inappropriate in light

of the nature of the offense and character of the offender. *See* App. R. 7(B); *Anglemyer v. State*, 868 N.E.2d 482. Although we are not required under App. R. 7(B) to be "extremely" deferential to a trial court's sentencing decision, we recognize the unique perspective a trial court brings to such determinations. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind.Ct.App.2007). Moreover, we observe that Brown bears the burden of persuading this court that his sentence is inappropriate. *Rutherford v. State*, 866 N.E.2d 867.

 With regard to the nature of the offense, we note that Brown's offenses victimized more than one victim. Each conviction was supported by separate and distinct images of child pornography depicting exhibition of uncovered genitals, deviate sexual conduct, sexual intercourse, or sadomasochistic abuse. Brown perpetuated the victimization of these children by his possession and dissemination of the images. We further note that children in the images appear to be much younger than the sixteen or eighteen years of age required by statute, with all appearing to be pre-pubescent and as young as four to six years of age. The record further reflects that Brown was in possession of and/or made available to others hundreds to thousands of images of child pornography. During Dubord's first internet search he determined that there were 718 pornographic images being disseminated from Brown's IP address. The subsequent search of Brown's basement bedroom and the computer located therein uncovered nearly 18,000 images of child pornography. The nature of the offense is not deserving of a lesser sentence.

With regard to the character of the offender, we note that Brown's criminal history, which includes three felony convictions for operating while intoxicated as well as several alcohol-related misdemeanor offenses. Brown also violated his probation on three occasions and had his sentence revoked on each occasion. Brown argues that his criminal history does not indicate a character deserving of the sentence imposed because, as Brown argues, his convictions are "mostly related to alcohol use." *Appellant's Brief* at 38. Although not directly related to the instant crimes, we find Brown's criminal history to be of some consequence. Indeed, there is evidence in the record indicating continued alcohol use by Brown, including pictures depicting numerous beer cans scattered around his basement bedroom and his computer desk space. On balance, in light of the nature of the offense and the character of the offender, we cannot say that the aggregate fourteen-year sentence imposed by the trial court is inappropriate.

Judgment affirmed.

NAJAM, J., and VAIDIK, J., concur.