## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Joseph Esparza,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

February 13, 2019

Court of Appeals Case No.
48A02-1310-CR-889

Appeal from the Madison Circuit Court

The Honorable Dennis D. Carroll, Judge

Trial Court Cause No.
48C06-1208-FB-1530

**Bradford, Judge.**

# Case Summary

In March of 2012, Joseph Esparza sexually assaulted his daughter's fifteen-year-old friend by penetrating her vagina with his fingers and penis. He was subsequently convicted of two counts of Class B felony sexual misconduct with a minor and sentenced to an aggregate seventeen-year term of incarceration with four years suspended to probation. Following the reinstatement of his direct appeal,[1] Esparza argues that (1) the trial court committed fundamental error when it allowed the jury to hear unchallenged statements about his alleged flight from the jurisdiction, (2) his convictions violate the prohibitions against double jeopardy, and (3) the evidence is insufficient to sustain his convictions. We affirm.

# Facts and Procedural History

In March of 2012, fifteen-year-old N.H. lived with her foster mother. C.E. was N.H.'s friend and N.H. would frequently go over to and spend the night at C.E.'s house. Esparza is C.E.'s father. N.H. viewed Esparza as a father-figure after living with C.E. and Esparza for a short period of time.

---

[1] Esparza requested that his direct appeal be dismissed and that he be granted permission to file a *Davis-Hatton* post-conviction petition. In subsequently requesting that his direct appeal be reinstated, Esparza indicated that he had "determined that post-conviction relief was not in his best interests at this time and the post-conviction court ha[d] dismissed his petition without prejudice." April 17, 2018 Order Reinstating Appeal.

[3] On March 23, 2012, N.H. went to C.E.'s home to "hang out." Tr. p. 332. Tracy Esparza, Esparza's then-girlfriend and now wife, picked N.H. up from home between 4:00 and 5:00 p.m. On the way back to Esparza's home, Tracy stopped at the Keg N' Bottle where she purchased alcohol for C.E. and N.H. Throughout the evening, N.H. and C.E. were drinking and hanging out with C.E.'s brother and his girlfriend, L.S., Desmond Soverns, Tracy, and Esparza.

[4] At some point, N.H. went upstairs to C.E.'s bedroom. As N.H. was standing looking in the mirror, Esparza came into the room, shut and locked the door, and walked up behind her. Esparza whispered "shhh" in N.H.'s ear as he put his hands down her pants. Tr. p. 340. N.H. felt Esparza's fingers go "inside" her vagina. Tr. p. 341. Esparza continued to move his fingers as N.H. said "no Joe, no." Tr. p. 341. Esparza then pushed N.H. back onto C.E.'s bed, pulled down her pants and undergarments, climbed on top of N.H., and inserted his penis into N.H.'s vagina. Esparza continued moving his penis in and out of N.H.'s vagina even as N.H. repeated "no Joe, no." Tr. p. 343. Esparza did not remove his penis until he and N.H. heard C.E. "banging on the bedroom door" yelling N.H.'s name and telling her to open the door. Tr. p. 344. After Esparza stopped, N.H. pulled her undergarments and pants up. Esparza hid in C.E.'s closet wearing only shorts. After N.H. left the room, L.S. observed Esparza come out of C.E.'s closet wearing only shorts.

[5] Once outside, N.H. called her boyfriend, asked him to come get her, and accused Esparza of raping her. C.E., L.S., Soverns, Tracy, and Esparza heard N.H. accuse Esparza of raping her. Esparza did not deny the allegation. After

N.H. attempted to contact her father, C.E. took N.H.'s phone away from her, causing a fight between C.E. and N.H. While C.E. and N.H. were fighting, Esparza and Tracy left the home.

[6] N.H.'s boyfriend notified N.H.'s foster mother of what N.H. had told him. After unsuccessfully attempting to call N.H., N.H.'s foster mother contacted Esparza and Tracy, who indicated that they were not home. N.H.'s foster mother went to Esparza's home and checked on N.H. before reporting the alleged assault to police.

[7] Investigating officers subsequently learned that prior to leaving the home, Esparza instructed Soverns to tell law enforcement that he and Tracy were not home at the time of the alleged sexual assault. Esparza also instructed C.E. and L.S. to lie to police. L.S. initially lied to police, but eventually admitted both that Esparza had instructed her to lie and that N.H. had accused Esparza of raping her.

[8] On August 16, 2012, the State charged Esparza with two counts of Class B felony sexual misconduct with a minor. Esparza was found guilty of both counts following a jury trial. The trial court then sentenced him to seventeen years with four years suspended to probation.

# Discussion and Decision

# I. Fundamental Error

Esparza contends that the trial court committed fundamental error when it allowed the jury to hear unchallenged statements about his alleged flight from the jurisdiction.

> An error is fundamental, and thus reviewable on appeal, if it made a fair trial impossible or constituted a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm. These errors create an exception to the general rule that a party's failure to object at trial results in a waiver of the issue on appeal. This exception, however, is extremely narrow and encompasses only errors so blatant that the trial judge should have acted independently to correct the situation. At the same time, if the judge could recognize a viable reason why an effective attorney might not object, the error is not blatant enough to constitute fundamental error.

*Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018) (internal citations and quotations omitted).

Esparza's argument seems to be that it was fundamental error for the trial court to allow the deputy prosecutor to make limited references to the fact that Esparza was recovered by federal marshals in Tennessee after the underlying charges were filed but not to somehow elicit unoffered testimony that he had previously left and returned to the jurisdiction on his own accord. As Esparza acknowledges, flight may be considered as consciousness of guilt. *Bennett v. State*, 883 N.E.2d 888, 892 (Ind. Ct. App. 2008), *trans. denied*. Esparza did not object to the deputy prosecutor's statements referring to his alleged flight from

the jurisdiction and has not alleged that his trial counsel was ineffective for failing to challenge the deputy prosecutor's statements relating to his alleged flight or presented any explanation on appeal as to how he was supposedly harmed by these statements. Instead, in making this argument, Esparza cites to statements made by Tracy during a pretrial hearing on the State's petition to revoke his bail indicating that he had previously left and returned to the jurisdiction on his own accord. He appears to argue that the trial court committed fundamental error by failing to elicit testimony similar to Tracy's pretrial statements during trial. The trial court, however, had no duty to do so. Further, even if Tracy's statements had been admitted during trial, we fail to see how these statements would have had any impact on the outcome of trial. As such, we conclude that Esparza has failed to establish error, much less fundamental error.

## II. Double Jeopardy

[11] Esparza next contends that his convictions for two counts of Class B felony sexual misconduct with a minor violate both the Federal and Indiana constitutional prohibitions against double jeopardy. "[D]ouble jeopardy protection prohibits twice subjecting an accused to the risk that he will be convicted of a single crime." *Garrett v. State*, 992 N.E.2d 710, 721 (Ind. 2013). In claiming that his convictions violate the prohibitions against double jeopardy, Esparza argues that because the charged behavior occurred during a single short episode of criminal conduct, the jury must have relied on the same evidence to find him guilty of both offenses. We disagree.

[12]    While Esparza mentions both the Fifth Amendment to the United States Constitution and Article 1, Section 14 of the Indiana Constitution in setting forth his double jeopardy claim, his argument is based solely upon case law relating to Article 1, Section 14 and he makes no independent argument relating to the federal constitution. As such, we will limit our review to Esparza's argument relating to the Indiana Constitution.[2]

> Article 1, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." In *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), our Supreme Court concluded that two or more offenses are the same offense in violation of Article I, Section 14 if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to obtain convictions, the essential elements of one challenged offense also establish the essential elements of another challenged offense. Under the actual evidence test, we examine the actual evidence presented at trial in order to determine whether each challenged offense was established by separate and distinct facts. *Id.* at 53. To find a double-jeopardy violation under this test, we must conclude that there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.*

---

[2] Even if Esparza had adequately raised a Fifth Amendment claim, we note that such a claim would fail. In *Blockburger v. United States*, 284 U.S. 299 (1932), the United States Supreme Court announced the now well-established test for determining federal double jeopardy claims. "Under the *Blockburger* test, a defendant's conviction upon multiple offenses will not be precluded by double jeopardy principles under the federal constitution if each statutory offense 'requires proof of a fact which the other does not.'" *Brown v. State*, 912 N.E.2d 881, 892 (Ind. Ct. App. 2009) (quoting *Blockburger*, 284 U.S. at 304). Each of Esparza's convictions required proof of a fact which the other did not, *i.e.*, penetration by Esparza's fingers and penetration by Esparza's penis.

*Vermillion v. State*, 978 N.E.2d 459, 464 (Ind. Ct. App. 2012).

[13] In *Vermillion*, the defendant was charged with two distinct acts of sexual misconduct. *Id.* The victim's testimony established distinct evidence for each count, punctuated by her repeated requests that the defendant stop touching her. *Id.* On appeal, we concluded that the State established that the defendant committed two separate offenses based on distinct facts and there was no reasonable possibility that the jury used the same evidentiary facts to establish both offenses. *Id.* at 465. As such, there was no double-jeopardy violation. *Id.*

[14] Likewise, here, N.H. testified that Esparza committed two distinct acts of sexual misconduct. The first was Esparza placing his fingers inside her clothing and inserting his fingers into her vagina. The second was Esparza forcing her down onto his daughter's bed, removing her pants, and inserting his penis into her vagina. Like the victim in *Vermillion*, N.H. testified that her repeated requests that Esparza stop were ignored. Esparza only stopped after his daughter and L.S. began knocking on the locked bedroom door trying to find N.H. As was the case in *Vermillion*, the State established that Esparza committed two separate offenses based on distinct facts. Because there is no reasonable possibility that the jury used the same evidentiary facts to establish the essential elements of both charges, there is no double-jeopardy violation. *See id*.

## III. Sufficiency of the Evidence

[15] Esparza last contends that the evidence is insufficient to sustain his convictions.

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146–47 (Ind. 2007) (citations, emphasis, and quotations omitted). A conviction may be based on the uncorroborated testimony of a single witness "if the testimony is sufficient to convince the trier of fact beyond a reasonable doubt." *Robinson v. State*, 446 N.E.2d 1287, 1291 (Ind. 1983) (providing that a victim's uncorroborated testimony was sufficient to sustain the defendant's conviction for child molesting).

[16] In challenging the sufficiency of the evidence to sustain his convictions, Esparza asks us to re-evaluate N.H.'s testimony based upon the incredible dubiosity rule.

This rule is applicable only when a lone witness offers inherently contradictory testimony that is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt. To interfere with the jury's authority to judge witness credibility and evaluate evidence, the court must be presented with testimony which runs counter to human

> experience and that reasonable persons could not believe…. The incredible dubiosity test is a difficult standard to meet, one that requires great ambiguity and inconsistency in the evidence.

*Edwards v. State*, 753 N.E.2d 618, 622 (Ind. 2001) (internal citations and quotations omitted).

[17]  Review of the record reveals that N.H.'s testimony was not incredibly dubious. N.H.'s testimony was consistent and was partially corroborated by other evidence in the record. N.H. testified that on the night in question, she was at Esparza's house to spend time with her friend, his daughter, C.E. At some point, N.H. went upstairs to C.E.'s room. N.H. was standing looking in the mirror in C.E.'s room when Esparza came into the room, shut and locked the door, and walked up behind her. Esparza whispered "shhh" in N.H.'s ear as he put his hands down her pants. Tr. p. 340. N.H. felt Esparza's fingers go "inside" her vagina. Tr. p. 341. Esparza continued to move his fingers as N.H. said "no Joe, no." Tr. p. 341. Esparza then pushed N.H. back onto C.E.'s bed, pulled down her pants and undergarments, climbed on top of N.H., and inserted his penis into N.H.'s vagina. Esparza continued moving his penis in and out of N.H.'s vagina even as N.H. continued to say "no Joe, no." Tr. p. 343. Esparza did not remove his penis until he heard C.E. "banging on the bedroom door" yelling N.H.'s name and telling her to open the door. Tr. p. 344. After Esparza stopped, N.H. pulled her undergarments and pants up while Esparza hid in C.E.'s closet wearing only shorts.

[18] While there was no evidence corroborating N.H.'s account of what happened inside C.E.'s bedroom, there was ample evidence corroborating other aspects of N.H.'s testimony. For instance, there was evidence in the record corroborating N.H.'s testimony that prior to the incidents involving Esparza, she and C.E. had been drinking alcohol that had been provided by Tracy. In addition, N.H. testified that once C.E. opened the door, she immediately left the room. This testimony was corroborated by L.S.'s testimony that once C.E. unlocked and opened the door to her bedroom, N.H. "walked straight out of the bedroom and walked downstairs." Tr. p. 585. Once in the bedroom, L.S. observed Esparza come out of C.E.'s closet wearing only shorts. Other evidence also supported N.H.'s testimony that she eventually became involved in a fight with C.E. after C.E. took her phone away as N.H. was trying to report Esparza's actions. N.H.'s credibility is also strengthened by the fact that Soverns and L.S. both admitted that Esparza attempted to persuade them to lie to police and say that he was not present in the home at the time when N.H. was assaulted.

[19] N.H.'s testimony was both consistent and sufficient to convince the jury beyond a reasonable doubt. Esparza's contention to the contrary amounts to a request to reweigh N.H.'s credibility and the evidence, which we will not do. *See Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002) ("We do not reweigh the evidence or assess the credibility of witnesses.").

[20] The judgment of the trial court is affirmed.

Najam, J., and Altice, J., concur.