

FILED

08/25/2017, 11:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael K. Ausbrook
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Anthony Wayne Barnett,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 25, 2017

Court of Appeals Case No.
22A01-1510-CR-1742

Appeal from the
Floyd Superior Court

The Honorable
Richard G. Striegel, Judge

Trial Court Cause No.
22D01-0212-FC-548

**Kirsch, Judge.**

[1] This case returns to our court following the grant of a conditional writ of habeas corpus by the United States District Court for the Northern District of Indiana ("the District Court"), which held that Anthony Wayne Barnett ("Barnett")

was denied the effective assistance of appellate counsel on direct appeal when counsel did not raise an appellate challenge to the timeliness of the State's second amendment to Barnett's charging information. The District Court, following the reasoning of the Seventh Circuit in *Shaw v. Wilson*, 721 F.3d 908, 912 (7th Cir. 2013), *reh'g denied, reh'g en banc denied, cert. denied*, concluded that Barnett was entitled to a new direct appeal to challenge his 2003 convictions for Class A felony burglary,[1] Class C felony battery,[2] and Class D felony intimidation,[3] and the finding that he was an habitual offender.[4] On appeal, Barnett raises numerous issues, which we consolidate and restate as:

> I.  Whether this court is barred from hearing Barnett's new direct appeal;
>
> II.  Whether the State's second amendment to Barnett's charging information, which added two new charges—Class A felony burglary and Class D felony intimidation—was impermissibly late under Indiana Code section 35-34-1-5, thus requiring a dismissal of those charges; and
>
> III.  Whether Barnett's appearance without counsel at a hearing on the State's first amendment to the charging information,

---

[1] *See* Ind. Code § 35-43-2-1.

[2] *See* Ind. Code § 35-42-2-1.

[3] *See* Ind. Code § 35-45-2-1.

[4] *See* Ind. Code § 35-50-2-8.

which added an habitual offender enhancement, denied Barnett his Sixth Amendment right to counsel.

[2] We affirm.

## Facts and Procedural History

[3] The facts supporting Barnett's 2003 convictions were set forth in this court's unpublished memorandum decision affirming the post-conviction court's denial of Barnett's petition for post-conviction relief. *Barnett v. State*, No. 22A01-0810-PC-505, 2009 WL 4927545 (Ind. Ct. App. Dec. 22, 2009) ("*Barnett II*"),[5] *trans. denied*. Here, a summary of those facts will suffice. Cynthia Bogard ("Bogard") met Jeanette Lewis ("Lewis") in 2002, and soon thereafter, Lewis started bringing people to Bogard's house to smoke crack. Barnett was one of the people who used drugs at Bogard's house, and on several occasions, Barnett brought along women who would have sex with him in exchange for drugs. Bogard felt she was no longer in control of her home and asked Barnett several times to stop coming over, but Barnett laughed at her requests. Around the same time, Barnett and his ex-wife, Tonya,[6] were trying to reconcile.

[4] On December 10, 2002, Bogard called Tonya and told her about Barnett's behavior, hoping Tonya could help. That same day, Bogard and others were in

---

[5] We refer to the different stages of Barnett's case as follows: *Barnett I* is this court's 2004 decision on Barnett's first direct appeal; *Barnett II* is this court's 2009 decision on Barnett's post-conviction appeal; and *Barnett III* is the District Court's 2015 decision granting Barnett a conditional writ of habeas corpus.

[6] Barnett's ex-wife's name is spelled both as Tonya, *Appellant's Br.* at 10, and Tanya, *Trial Tr.* at 263. We use "Tonya," the spelling included in the appellant's brief.

her home when they heard pounding on the door. Bogard opened the door a crack, peered out, and saw Barnett as he grabbed the door and pushed it open. Barnett shoved Bogard down and started screaming that she had ruined his life with Tonya. Barnett said he had brought two others to help beat up Bogard; Barnett also told Bogard he had a gun in the car. Barnett stomped on Bogard with his heel and threatened to kill her if she did not call Tonya and recant. Barnett got the phone, dialed Tonya's number, and had Bogard talk to her. Once off the phone, Bogard fled to a neighbor's house to call the police. Bogard had a knot on her head, her head was bleeding, and her shoulder hurt. She also had bruises on her shoulder, chest, and head—one of the bruises on her chest near her shoulder was a pattern injury caused by the heel of a shoe. Testimony at trial revealed that pattern injuries result from significant force; the injuries were consistent with Bogard's account of the attack.

[5] On December 13, 2002, the State charged Barnett with one count of Class C felony battery. The trial court set the omnibus date for January 7, 2003 and scheduled the jury trial for February 17, 2003.[7] Barnett's appointed attorney ("trial counsel") filed his appearance in the case on December 18, 2002. On February 4, 2003, two weeks before the scheduled trial and almost a month after the omnibus date, the State filed the first amended information, adding an habitual offender count ("the habitual amendment"). That same day, the trial court held a pretrial conference, at which Barnett "was apparently represented

---

[7] The trial date was later changed to February 18 because February 17 was a court holiday.

by [trial counsel]." *Appellant's Br.* at 12. On February 5,[8] "the trial court held an initial hearing of some sort with respect to the" habitual amendment ("the habitual amendment hearing"), and Barnett, who appeared without counsel,[9] did not object to the addition of the habitual count, but requested a continuance. *Appellant's Br.* at 12.

[6]    On February 12, 2003, six days before Barnett's scheduled trial and five weeks after the omnibus date, the State filed a second amendment to the information ("the second amended information"), which was based on the same underlying acts, and added one count of Class A felony burglary resulting in bodily injury and one count of Class D felony intimidation. *Appellant's Br.* at 13 (citing *Appellant's App.* at 3, 35-36).[10] On February 12 and 13, 2003, the trial court held a hearing, and over Barnett's objection, the trial court allowed the second amended information. Two continuances were granted to Barnett, and the jury trial began two months later. Testimony was heard on April 14 and continued through April 16, 2003, at which time the trial court granted Barnett's request to adjourn in order to depose a key defense witness. The final two days of trial were held on May 12 and May 13, after which the jury found Barnett guilty of

---

[8] There is a discrepancy regarding the date of this hearing. Both parties assert that the hearing regarding the habitual amendment was held on February 6; however, the CCS reflects that the hearing was held on February 5, 2003. Accordingly, we refer to the hearing date as February 5, 2003.

[9] The record before us contains no explanation as to why trial counsel did not appear at this hearing. *Appellant's Br.* at 12.

[10] The only appendices in the record before us are the ones that Barnett filed in his 2004 direct appeal; therefore, a reference to *Appellant's App.* is a reference to those documents.

burglary, battery, and intimidation and found him to be an habitual offender. The trial court ordered Barnett to serve an aggregate executed sentence of eighty years—fifty years for Class A felony burglary and a concurrent five years for Class C felony battery, with an habitual enhancement of thirty years added to the burglary. No sentence was entered for the Class D felony intimidation conviction. This court affirmed Barnett's convictions and sentences, and our Supreme Court denied transfer. *Barnett v. State*, No. 22A04-0312-CR-616 (Ind. Ct. App. Sept. 29, 2004), *trans. denied*.

[7]     In September 2005, Barnett filed a petition for post-conviction relief, alleging that his trial counsel rendered ineffective assistance. He also argued that appellate counsel had been ineffective on direct appeal for inadequately challenging the habitual amendment and for not raising any challenge to the timeliness of the second amended information. The post-conviction court denied Barnett's petition in September 2008, and this court affirmed that denial. In pertinent part, we found that a challenge to the inclusion of the habitual offender enhancement had been waived for failure to present an objection to the trial court and that appellate counsel reasonably declined to challenge the second amended information because late amendments not prejudicing a defendant's substantial rights were routinely allowed under prevailing jurisprudence, and appellate counsel would have reasonably determined that a challenge to the amendment would not succeed on appeal. *Barnett II*, 2009 WL 4927545, at *8-10. The Indiana Supreme Court denied transfer.

In 2010, Barnett filed a filed a petition for a writ of habeas corpus in federal court, challenging his 2003 Floyd County convictions for burglary, battery, intimidation, and the adjudication that he was an habitual offender. Initially, the District Court denied relief, finding, in pertinent part, that our court had not unreasonably applied clearly established federal law in adjudicating Barnett's claims of ineffective assistance of counsel. *Barnett v. Superintendent*, No. 3:10-CV-157-TLS, 2013 WL 3338493, at *3, *7 (N.D. Ind. July 2, 2013) ("*Barnett III*"). However, in February 2014, the United States Court of Appeals for the Seventh Circuit ("Seventh Circuit") remanded the matter back to the District Court for reconsideration in light of *Shaw v. Wilson*, 721 F.3d 908 (7th Cir. 2013).

Following additional briefing, the District Court on remand granted conditional federal habeas relief for Barnett's claim of ineffective assistance of appellate counsel regarding the second amended information. The District Court's judgment, in part, read:

> [T]he amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody . . . is CONDITIONALLY GRANTED . . . . *Within 120 days of this Order, the State must either release the Petitioner or grant him leave to file a new direct appeal* with the assistance of counsel.

*Barnett III,* No. 3:10-CV-157-TLS, 2015 WL 3466294, at *7 (N.D. Ind. June 1, 2015) (emphasis added). Referring to the habitual amendment hearing, the District Court commented in a footnote:

It is unclear why appellate counsel did not raise the absence of counsel at that hearing as an issue in the direct appeal. It is disconcerting that the Petitioner was found to have waived an issue at a hearing where he was without counsel. If the State permits the Petitioner to file another direct appeal, this is an issue that warrants further exploration. *See Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000) ("[T]he complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice because the adversary process itself has been rendered presumptively unreliable."); *United States v. Cronic*, 466 U.S. 648 (1984).

*Id.* at *4 n.1.

[10] After 120 days had run without action by the State, Barnett filed a motion with the District Court on September 30, 2015, asking for his immediate release. The State filed a response, explaining that it had misunderstood the specifics of the conditional writ and asking the District Court to grant more time for the State to comply with the conditional writ. The District Court granted the State an extension until October 29, 2015, to comply with the District Court's conditional writ. The State complied, and this appeal ensued.[11]

---

[11] While this appeal was pending, Barnett filed an appeal with the Seventh Circuit, challenging the appropriateness of the District Court's decision to grant the State an extension of time to comply with the conditional writ. Barnett argued that the District Court had no authority to extend the 120-day time period, especially in light of the fact that the 120 days had run prior to the State having requested an extension. The Seventh Circuit held oral argument on the issue in April 2017, and in June 2017, the Seventh Circuit affirmed the District Court's decision that had granted the State additional time to comply with the writ. *Barnett v. Neal*, 860 F.3d 570, 574, 2017 WL 2644333 (7th Cir. 2017).

# Discussion and Decision

## I.  Appropriateness of New Direct Appeal

At the outset, we dispose of several preliminary matters.  First, Barnett raises four issues, each of which is a permutation of the same contention—that our court could not order a new direct appeal under the circumstances of this case.  Specifically, Barnett contends that this appeal should be dismissed because:  (1) this court has no authority "to simply order a 'new appeal' out of thin air," *Appellant's Br*. at 22; (2) the question of whether Barnett was entitled to a new appeal was res judicata; (3) the State was judicially estopped from requesting a new appeal; and (4) a new trial and not a new appeal was the proper remedy.  These arguments stem from the District Court's decision that granted Barnett a conditional writ of habeas corpus.

"Federal habeas courts do not sit to correct errors of fact, but to ensure that individuals are not imprisoned in violation of the Constitution."  *Herrera v. Collins*, 506 U.S. 390, 390 (1993).  Barnett filed his federal petition for a writ of habeas corpus claiming that appellate counsel was ineffective when he did not challenge the properly-preserved issue that the second amended information was allowed in error.  By filing that petition, Barnett surrendered himself to the federal court's determination as to the proper remedy for such a violation.  Federal courts have the power to fashion a remedy to suit the needs of a particular case, including the ability to grant a conditional writ to allow the State the opportunity to correct the defects on which the order of discharge is based.  *See Peyton v. Rowe*, 391 U.S. 54, 66 (1968) (in federal habeas actions,

federal courts have power to fashion appropriate relief other than immediate release, as federal writ is not a static, narrow, formalistic remedy).  Here, the District Court opted to grant Barnett a conditional writ of habeas corpus, which allowed the State to either grant Barnett leave to pursue a new direct appeal within 120 days or release Barnett.  If Barnett believed that it was error for the District Court to grant a new direct appeal as part of the remedy, he should have sought relief in the federal courts.  Barnett's attempts to undermine the District Court's order in state court amount to an impermissible collateral attack.  *See Minix v. Canarecci*, 956 N.E.2d 62, 71 (Ind. Ct. App. 2011) (party who believed federal consent judgment was in error should have sought relief in federal courts), *trans. denied*; *Dawson v. Estate of Ott*, 796 N.E.2d 1190, 1196 (Ind. Ct. App. 2003) (noting that action in state court that attempts to undermine federal court decision is impermissible collateral attack).

[13]     Second, Barnett claims that the instant appeal cannot proceed because his due process rights were violated when the State did not serve him notice of the new direct appeal, pursuant to Indiana Appellate Rule 24.  Barnett claims, "If actual notice of an action derived from a source other than service of process is insufficient to satisfy the requirements of due process, *e.g.*, *Iemma v. JP Morgan Chase Bank, N.A.*, 992 N.E.2d 732, 741 (Ind. Ct. App. 2013), then this appeal violates Barnett's federal right to due process." *Appellant's Br*. at 27.  In his brief, however, Barnett does not offer any reasoning or cite to any authority to support the proposition that the District Court's order granting him a conditional writ, which included the grant of a new appeal, was insufficient to

satisfy the requirements of due process. As such, Barnett has waived this argument. *See* Ind. Appellate Rule 46(A)(8)(a) (each issue presented by appellant must be "supported by cogent reasoning . . . [and] supported by citations to authorities [and] statutes[.]"); *Waters v. State*, 65 N.E.3d 613, 618 (Ind. Ct. App. 2016) (party waives issue by not developing cogent argument or providing adequate citation to authority and portions of the record).

## II. Timeliness of Amendment to Charging Information

[14] On February 12, 2003, six days before Barnett's original trial date and five weeks after the omnibus date, the trial court allowed the State to file the second amended information. That amendment, while stemming from the same events that gave rise to the initial charge of battery, added one count of Class A felony burglary resulting in bodily injury and one count of Class D felony intimidation, and "changed the theory of the original Class C battery charge from specific injuries to 'extreme pain." *Appellant's App*. at 29. Barnett contends that, under the version of Indiana Code section 35-34-1-5 that was in effect at the time he committed the instant crimes, the trial court erroneously allowed the State to amend the initial Class C felony battery information by belatedly adding the additional two counts through the second amended information.

[15] Amendments to a charging information are governed by Indiana Code section 35-34-1-5. In 2002, when Barnett committed the instant offenses, that section provided:

(b) The indictment or information may be *amended in matters of substance or form*, and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant, *at any time up to*:

> (1) *thirty (30) days if the defendant is charged with a felony*; or

> (2) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors;

*before the omnibus date*. When the information or indictment is amended, it shall be signed by the prosecuting attorney.

Ind. Code § 35-34-1-5 (2002) (emphases added). Barnett contends that the addition of two new felonies was a matter of substance, and therefore, the second amended information was precluded as untimely under Indiana Code section 35-34-1-5(b) as it existed at the time he committed these crimes.

[16] As support for his claim, Barnett urges this court to follow our Supreme Court's reasoning in *Fajardo v. State*, 859 N.E.2d 1201 (Ind. 2007), which was handed down in January 2007. In *Fajardo*, our Supreme Court, analyzing Indiana Code section 35-34-1-5, held that "when an individual is charged with a felony, amendments to matters of substance are permissible only if made more than thirty days before the omnibus date, regardless of whether the defendant's substantial rights were prejudiced." *Brown v. State*, 912 N.E.2d 881, 888 (Ind. Ct. App. 2009), *trans. denied*.

[17]    The Indiana General Assembly responded to *Fajardo* by amending Indiana Code section 35-34-1-5 and, deeming the amendment urgent, passed the amendment within four months after *Fajardo* was decided.[12]  Subsection (b) of the amended statute provided:

> (b) The indictment or information may be *amended in matters of substance* and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant *at any time*:
>
> (1) up to:
>
>> (A) thirty (30) days if the defendant is charged with a felony; or
>>
>> (B) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors;
>
> before the omnibus date; or
>
> (2) *before commencement of trial*;
>
> *if the amendment does not prejudice the substantial rights of the defendant*.  When the information or indictment is amended, it

---

[12] *Fajardo* was decided in January 2007.  Within four months, the General Assembly had passed the amendment to Indiana Code section 35-34-1-5 in Public Law 178, Section 1.  While the public law contained other amendments, the amendment to Indiana Code section 35-34-1-5 was the only amendment deemed urgent enough to become "effective upon passage," which was May 8, 2007.

shall be signed by the prosecuting attorney or a deputy prosecuting attorney.

I.C. § 35-34-1-5(b) (2007) (emphases added).

[18] Under the amended subsection (b), the State had the discretion to amend the charging information on a matter of substance at any time before the commencement of trial so long as the amendment did not prejudice the defendant's substantial rights. *See Gaby v. State*, 949 N.E.2d 870, 874 (Ind. Ct. App. 2011) (State may amend charging information "even in matters of substance at any time before the commencement of trial so long as the amendment does not prejudice the defendant's substantial rights"). The question remained, however, whether the statute had retroactive application. Subsequent to that amendment, our court held that the application of the revised Indiana Code section 35-34-1-5 does not violate the ex post facto provisions of either the Indiana or United States Constitutions. *Brown*, 912 N.E.2d at 887-89; *see also Hurst v. State*, 890 N.E.2d 88, 93-95 (Ind. Ct. App. 2008), *trans. denied*; *Ramon v. State*, 888 N.E.2d 244, 251-52 (Ind. Ct. App. 2008). Further, we found that strong and compelling reasons exist for retroactive application of that amended statute. *Brown*, 912 N.E.2d at 889-90. Following the rationale of *Brown*, *Hurst*, and *Ramon*, we, therefore, proceed

with our analysis of the propriety of the amendments to Barnett's charging information under the amended version of Indiana Code section 35-34-1-5.[13]

[19] On December 13, 2002, the State charged Barnett with Class C felony battery and set the omnibus date for January 7, 2003. After further investigation of the incident, the trial court allowed the State to file the second amended information on February 12, 2003, adding one count of Class A felony burglary resulting in bodily injury and one count of Class D felony intimidation. This amendment was allowed five weeks after the omnibus date, but two months before the commencement of the trial and three months before the defense presented its case in chief. The second amended information did not refer to another time or place; instead the two new counts were based on the same underlying acts that Barnett committed on December 10, 2002.

[20] Under the revised Indiana Code section 35-34-1-5(b), "the State can make an amendment to a matter of substance at any time before the commencement of trial so long as the amendment does not prejudice the defendant's substantial

---

[13] This court recently handed down *Shaw v. State*, No. 02A03-1312-CR-505 (Ind. Ct. App. Aug. 17, 2017), a case that addressed facts similar to our own. We note that our discussion of *Fajardo* in no way changes our analysis and decision in *Shaw*. Like Barnett, Shaw was granted a new direct appeal following the federal court's grant of a conditional federal writ of habeas corpus on the basis that Shaw's appellate counsel was ineffective for not challenging whether an amendment to the charging information was untimely filed pursuant to Indiana Code section 35-34-1-5. However, unlike Barnett, Shaw made no argument that *Fajardo* should guide the *Shaw* court's determination of whether the trial court erred in allowing the amendment to Shaw's charging information. In reaching its decision, the *Shaw* court relied on cases decided prior to 2003 that "interpreted [I.C.] § 35-34-1-5 to allow substantive amendments so long as the substantial rights of the defendant were not prejudiced." That holding is consistent with the analysis required under subsection (b) of the amended statute, which allows a substantive amendment to be made to an information at any time prior to trial if the amendment does not prejudice the substantial rights of the defendant.

rights." *Ramon*, 888 N.E.2d at 250. "'A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge.'" *Brown*, 912 N.E.2d at 890 (quoting *Ramon*, 888 N.E.2d at 252. If the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights. *Erkins v. State*, 13 N.E.3d 400, 405 (Ind. 2014). "Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges." *Id*. at 405-06.

[21]     Here, Barnett was initially charged with battery as a Class C felony. To prove battery, the State had to prove that Barnett touched Bogard in a rude insolent or angry manner resulting in extreme pain. Ind. Code § 35-42-2-1(a)(3). Bogard did not deny that her home was used by Barnett and others as a place to gather to smoke crack, and that she herself often joined them in smoking crack. *Tr.* at 50, 52. Barnett's theory at trial was that Bogard condoned the arrangement, and let Barnett come and go as he pleased, in exchange for Barnett bringing her some milk and beer and, sometimes, giving her cash so she could pay the utilities and buy crack for her own use. *Id.* at 31. The defense argued that Bogard became angry when Barnett ignored her and did not pay her money she claimed she was owed, and that this anger prompted Bogard to call Tonya, ostensibly to get Barnett in trouble. *Id*. at 33-34. The defense conceded that Barnett went to Bogard's home on the evening in question, but argued that Barnett had not pushed his way into the home; instead, Bogard had let him in, hoping Barnett had her money. *Id*. at 34-35. The defense argued that as

Bogard stepped back from her door, she tripped over her rambunctious dog causing herself injury. *Id.* at 35-36.

[22] This theory was equally applicable as a defense to the later-added charges of burglary and intimidation. To prove burglary, the State had to prove that Bogard sustained bodily injury when Barnett broke and entered her home with the intent to commit the felony of intimidation therein. Ind. Code § 35-43-2-1. To prove Class D felony intimidation, the State had to prove that Barnett communicated a threat to commit a forcible felony against Bogard. Bogard testified that Barnett pushed his way into her home, repeatedly hit and kicked her, resulting in bodily injury, and threatened that he would kill her unless she called and cleared things up with Tonya. *Tr.* at 76-82. Barnett's defense to battery—that Bogard merely fell backwards over her own dog when she answered the door to let Barnett in—would have been, if the jury believed it, an equally convincing defense for the other two charges.

[23] Here, the second amended information added the new charges of burglary and intimidation after the omnibus date had run. After the State filed the second amended information, Barnett asked for, and the trial court granted Barnett, two continuances. At the request of defense counsel, the trial court also allowed an adjournment from April 16 until May 12, 2003. *Appellant's App.* at 370. The State presented its case-in-chief two months after the second amended information was filed, but the defendant did not have to present his case-in-chief until three months after the second amended information was filed. Barnett had sufficient notice of the new charges. Further, Barnett was given

more than two months to prepare his case, which mostly hinged on the jury's determination as to the credibility of the witnesses. We find no prejudice to Barnett's substantial rights. The trial court did not err when it allowed the State to amend the charging information to add the offenses of Class A felony burglary and Class D felony intimidation.

## III. Sixth Amendment Right to Counsel[14]

[24] The trial court set the omnibus date for January 5, 2003. On February 4, 2003, the State filed the habitual amendment. The next day, Barnett appeared at the habitual amendment hearing without his trial counsel. Barnett asserts that the habitual amendment hearing was a critical stage of his prosecution at which he had a right to be represented by counsel. *Appellant's Br.* at 33. During that hearing, "Barnett, himself, requested a continuance, but he did not object to the amendment . . . ." *Id.* Barnett contends that this lack of representation at that critical stage was a violation of his right to counsel under the Sixth Amendment to the United States Constitution.[15] We disagree.

[25] "The constitutional guarantee of counsel under the Sixth Amendment has been construed to include four rights: the right to counsel, the right to effective

---

[14] In the instant appeal, Barnett's only claim regarding the first amended information is that he was denied his Sixth Amendment right to counsel when his trial counsel did not appear at the habitual amendment hearing.

[15] A criminal suspect has a right to counsel under both the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Indiana State Constitution. Barnett makes no claim that he was denied the right to counsel under the Indiana Constitution.

assistance of counsel, the right to a preparation period sufficient to ensure a minimal level of quality of counsel, and the right to be represented by counsel of one's own choice." *Sweeney v. State*, 704 N.E.2d 86, 106 (Ind. 1998) (quoting *United States v. McCutcheon*, 86 F.3d 187, 189 (11th Cir. 1996) (citations omitted)). Barnett's claim arises from the first right, the right to counsel.[16] Trial counsel filed an appearance for Barnett on December 18, 2002. The habitual amendment hearing at which Barnett appeared without counsel was February 5, 2003, a date by which his right to counsel had been satisfied. Barnett does not deny that trial counsel was appointed; instead, he argues that, in the absence of counsel at the habitual amendment hearing, regardless of the reason, he did not know to object to the untimeliness of the habitual offender charge, resulting in that issue being waived for appellate review. *Appellant's Br.* at 33.

[26]     A criminal suspect's right to counsel is a cornerstone of a fair trial, guaranteed by the Sixth Amendment to the United States Constitution. *State v. Taylor*, 49 N.E.3d 1019, 1024 (Ind. 2016). The Sixth Amendment requires the assistance of counsel at all critical stages of the prosecution. *See Hopper v. State*, 957 N.E.2d 613, 616 (Ind. 2011) (defendant's right to counsel arises at any point during criminal proceeding in which absence of counsel would erode defendant's right to fair trial). "This includes any critical stage in which "'(1) incrimination may occur or (2) where the opportunity for effective defense must

---

[16]We note that Barnett's trial counsel filed an appearance on December 18, 2002. Accordingly, at the time of the February 2002 habitual amendment hearing, Barnett's right to be represented by counsel had been satisfied. It is not clear why his trial counsel was not present at that hearing.

be seized or be foregone.'" *Id.* at 616 (citing *Hernandez v. State*, 761 N.E.2d 845, 850 (Ind. 2002)). The denial of this constitutional right is subject to a harmless-error analysis. *Hernandez*, 761 N.E.2d at 849 (citation omitted).

[27]  Barnett contends that, having been deprived of counsel at the habitual amendment hearing, he did not know to object to the untimely addition of the habitual offender enhancement which resulted in waiver of that issue on appeal.[17] *Appellant's Br.* at 33. Barnett argues that it is unlikely that the issue would have been waived if counsel had been present. *Id.* at 34.

[28]  The State counters, and we agree, that trial counsel could have objected to the inclusion of the habitual offender enhancement at any time up to and including trial. *See White v. State*, 963 N.E.2d 511, 515 (Ind. 2012) ("At no point during this hearing, at any other point before trial, or any point during trial did White object to the late filing" of State's amended information including habitual-offender charge). Accordingly, any waiver of Barnett's challenge on appeal to the habitual amendment was not attributable solely to trial counsel's absence at the habitual amendment hearing. Barnett has shown no prejudice.[18] We find

---

[17] The CCS reflects that the habitual amendment hearing was recorded; however, there is no audio recording or transcript of that hearing in the record before us. *Appellant's App*. at 2.

[18] While Barnett argues that the State has failed to show that the absence of counsel at the hearing was harmless, *Appellant's Br*. at 34, the burden to first show prejudice lies with him. *See Jackson v. State,* 938 N.E.2d 29, 39 (Ind. Ct. App. 2010) ("A defendant who challenges the State's filing of an habitual offender allegation on the ground that it is filed outside of the time limit must demonstrate that he was prejudiced.").

that error, if any, in Barnett's trial counsel being absent from the habitual amendment hearing was harmless.

[29] Affirmed.

[30] Robb, J., and Barnes, J., concur.