## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 26 2019, 9:13 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amy D. Griner
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Santori R. Dorsey, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | September 26, 2019 <br><br> Court of Appeals Case No. 18A-CR-2921 <br><br> Appeal from the Elkhart Circuit Court <br><br> The Honorable Michael A. Christofeno, Judge <br><br> Trial Court Cause No. 20C01-1709-MR-7 |

**Altice, Judge.**

**Case Summary**

[1] Following a jury trial, Santori R. Dorsey was convicted of felony murder and Level 2 Felony conspiracy to commit robbery. The trial court sentenced Dorsey to an aggregate term of eighty-seven and one-half years with ten of those years suspended to probation. On appeal, Dorsey presents the following restated issues for our review:

1. Did the trial court properly allow the State to file an amended information that added a new charge?

2. Do Dorsey's convictions violate double jeopardy?

3. Did the State present sufficient evidence to support the convictions?

4. Is Dorsey's aggregate sentence inappropriate?

[2] We affirm.

## Facts & Procedural History

[3] In August 2017, Michael Jagger Raeder (a/k/a Jagger) was living in a small apartment in a house at 325 State Street in Elkhart. This residence, which was owned by a drug dealer, was a known "trap house" in the neighborhood, meaning that drugs were sold there. *Transcript Vol. II* at 132. Jagger sold marijuana out of his apartment. Demesha Partee lived at the River Run Apartments located across the railroad tracks about 250 feet away.

[4] On the evening of August 26, 2017, Alexis Pellot and Brianna Bratcher were hanging out with Partee at her apartment. Lenell Williams (a/k/a Poppie), Ja'Wan Hines (a/k/a J-Bob), and Daniel Brown (a/k/a DB) also visited Partee's apartment that night. Around midnight, Pellot, Bratcher, and Partee left and drove to South Bend to pick up Dorsey. The four stopped at a gas station on the way back and bought "rillos" for "put[ting] weed in" to smoke. *Id.* at 138. When they arrived back at Partee's apartment around 1:30 a.m., everyone else was still there. They all hung out and "were just smoking [marijuana] and drinking." *Id.* at 139.

[5] At some point, J-Bob left to go buy marijuana at the trap house. He came back with marijuana and told the group that "Jag was the only one over there at the house." *Id.* Dorsey responded, "We should go over there and rob him." *Id.* at 140. Dorsey, J-Bob, and DB had guns with them at the time. Before Poppie, Dorsey, and DB left, Bratcher heard Poppie say, "Let's go hit a lick." *Id.* at 208. She understood this to mean that they "were gonna go over and commit a robbery." *Id.*

[6] Dorsey, Poppie, and DB left the apartment for about fifteen minutes and then returned before leaving together again. While they were gone the second time, Partee and Pellot walked out to Pellot's car to "grab the rillos." *Id.* at 141. They then heard several gunshots from the area of the trap house and decided to drive over that way. As they drove, they encountered DB running and yelling to them, "Go." *Id.* at 143. Partee and Pellot drove slowly by the trap house and then returned to Partee's apartment. DB, Dorsey, Bratcher, and J-

Bob were inside. Dorsey was laying on the floor with a gunshot wound to his thigh. Dorsey reported "[t]hat Poppie was gone and something about a gun jamming up." *Id*. at 144. Pellot helped wrap Dorsey's leg but refused his request to take him to the train station in South Bend so that he could get to Indianapolis. Dorsey eventually found his way to Indianapolis.

[7] At trial, Jagger detailed what happened inside his apartment at the trap house in the early morning of August 27, 2017. He testified that it was common for there to be multiple people stopping by and hanging out at the trap house to buy and sell marijuana. Jagger had partied with others in his apartment the night before and then fell asleep in the living room. He awoke to a knock on the door. Jagger looked out the window and saw three men on his front porch, whom he did not recognize but later identified as Dorsey, Poppie, and DB. Jagger opened the door, as was common for him to do. All three tried to enter, but Jagger told them just two could come in. Poppie and Dorsey came in, and DB remained on the porch. Jagger immediately "felt a tension." *Id*. at 231.

[8] Upon entering the house, either Dorsey or Poppie asked Jagger "if Bro was there." *Id*. at 231. Jagger indicated, falsely because he was scared, that Bro was in the back. Dorsey, who entered behind Poppie, then pulled out a gun and shot Jagger in the leg. Poppie also had a gun, and Jagger struggled with him for that gun as another shot went off. Jagger eventually "grabbed [Poppie's] gun, hit the ground … [a]nd started firing back." *Id*. at 232. Jagger recalled Dorsey firing at him several times and also that Dorsey had problems with a gun he was using, like having a jam or changing the clip.

[9] At the end of the firefight, Dorsey had been shot in the leg and fled the scene, Poppie had been shot four times and died at the scene, and Jagger had been shot at least three times. Caleb Owens, a National Guardsman and neighbor who heard the shots and saw people run from the trap house, went inside to help. He saw Jagger on the ground bleeding and Poppie slumped motionless behind the door with his back against the wall. Owens did not know either man, and he decided to leave because Jagger was "grabbing weapons" and yelling "Get the F out." *Transcript Vol. IV* at 32, 33. Owens walked out to find Josh McBride – whom Owens knew was involved with drugs – standing on the front porch. McBride went in and closed the door, and Owens heard another gunshot as he walked away. McBride had picked up one of the guns at the scene, shot Jagger in the back, and then left. Thereafter, Owens ran back inside and rendered help to Jagger, who was "bleeding profusely." *Id*. at 37.

[10] Officers were dispatched to the scene of the shooting at approximately 3:30 a.m., and Jagger was taken to the hospital. Among other things, officers recovered from the scene a large number of spent casings and bullets (both fired and unfired) and three handguns – a Ruger (E-1), a 9mm Smith & Wesson (E-2), and a .40 caliber Smith and Wesson (E-3). E-1 and E-2 were both "stovepiped," meaning that the guns were jammed with a spent casing. *Transcript Vol. III* at 64. None of the ballistics evidence came back to E-1, while a number of casings and projectiles were identified as coming from, or likely coming from, E-2 and E-3. Two bullets were recovered from Poppie's body. The bullet in his leg was fired from E-2 and the bullet through his right upper

back to his neck and then his left jaw was fired from E-3. Dorsey's DNA, as well as Jagger's, was found on E-1, and Jagger's DNA, along with an unknown person's, was found on E-3.

After Dorsey was located in Indianapolis, detectives interviewed him on September 7, 2017. Dorsey denied being in Elkhart on the morning in question. He had an apparent bullet wound to his leg, and Dorsey indicated that he had shot himself at some unspecified location in Indianapolis.

On September 8, 2017, the State charged Dorsey with felony murder, alleging a killing during the commission of robbery or attempted robbery. On September 28, 2018, seventeen days before trial, the State sought to amend the information to include a second count, Level 2 felony conspiracy to commit robbery. The trial court allowed the amendment over Dorsey's objection. Following a four-day jury trial, Dorsey was found guilty as charged on October 18, 2018. The trial court entered judgments of conviction and sentenced Dorsey, on November 15, 2018, to sixty years in prison with five years suspended for felony murder and a consecutive term of twenty-seven and one-half years with five years suspended for conspiracy. This resulted in an aggregate sentence of eighty-seven and one-half years with ten years suspended to probation. Dorsey now appeals. Additional information will be provided below as needed.

## Discussion & Decision

### 1. Amendment of the Charging Information

[13] Dorsey initially contends that the trial court improperly allowed the State to amend the information to add the conspiracy count seventeen days before trial. He asserts that adding the second count subjected him to "an additional potential sentence and changed the theory of defense with little time for preparation." *Appellant's Brief* at 8. Additionally, Dorsey notes that the trial court did not continue the trial after allowing the amendment.

[14] Ind. Code § 35-34-1-5(b) permits amendments on matters of substance any time before the commencement of trial as long as "the amendment does not prejudice the substantial rights of the defendant." *Id.*; *see also Barnett v. State*, 83 N.E.3d 93, 101-102 (Ind. Ct. App. 2017), *trans. denied*. The "substantial rights" of a defendant include a right to sufficient notice and an opportunity to be heard regarding the charge. *Id.* at 102; *Gaby v. State*, 949 N.E.2d 870, 874 (Ind. Ct. App. 2011). These rights are not prejudiced if: "(1) a defense under the original information would be equally available after the amendment, and (2) the defendant's evidence would apply equally to the information in either form." *Gaby*, 949 N.E.2d at 874. The ultimate question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges. *Barnett*, 83 N.E.3d at 102.

[15] We first observe that there is no indication in the record that Dorsey requested a continuance at the hearing on the State's motion to amend or after the motion was granted. "The failure to request a continuance after the trial court allows a pre-trial substantive amendment to the charging information over defendant's objection results in waiver of the issue on appeal." *Gaby*, 949 N.E.2d at 874.

Accordingly, Dorsey's argument on appeal regarding the amendment is waived. Waiver notwithstanding, Dorsey would still not prevail.

[16] Dorsey received notice of the new charge and opportunity to be heard regarding the amendment. At the hearing on the State's motion to amend, defense counsel acknowledged that the new charge alleged "no new information" and was based on facts that the parties had known all along. *Transcript Vol. II at 8.* The State's theory of the case did not change as a result of the amendment, and Dorsey does not even attempt to explain how the amendment affected his defense strategy.[1] In sum, Dorsey has wholly failed to establish that his substantial rights were prejudiced by the amendment.

## 2. Double Jeopardy

[17] Next, Dorsey argues that his convictions for conspiracy to commit robbery and felony murder violate double jeopardy, specifically Article 1, Section 14 of the Indiana Constitution, which provides that "No person shall be put in jeopardy twice for the same offense." Under Article 1, Section 14, a defendant may not be convicted of two offenses if "with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential

---

[1] In ruling on the motion to amend, the trial court found, among other things, that "the Defendant's defenses to the original murder charge … apply equally to the Conspiracy to Commit Robbery Resulting in Serious Bodily Injury" because "the robbery which allegedly is the basis of [the conspiracy charge] is also the felony which gives rise to the Felony Murder alleged in Count I of the Amended Charging Information." *Appellant's Appendix Vol. II at 36.* Dorsey's bald assertions to the contrary on appeal are unconvincing and too late, as he did not argue below that the amendment would affect his defense strategy.

elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999) (emphases in original). Our focus here is on the actual evidence used to convict Dorsey of the offenses. This analysis requires a consideration of whether a reasonable possibility exists that the evidentiary facts used to establish the essential elements of one offense may also have been used to establish all of the essential elements of the other challenged offense. *See Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013). The reasonable possibility standard requires more than a logical possibility and turns on a practical assessment of whether the jury may have latched on to the same facts for both convictions. *Id*. at 719-20 ("We evaluate the evidence from the jury's perspective and may consider the charging information, jury instructions, and arguments of counsel.").

[18] Here, Dorsey observes that to establish the felony murder count as charged and presented to the jury, the State was required to prove that the killing occurred during the commission of an attempted robbery, which required evidence that Dorsey took a substantial step toward committing the robbery. The jury was instructed that the alleged substantial step was "go[ing] to 325 State Street while armed with a handgun." *Transcript Vol. IV* at 96. This same evidence was used by the State to establish the overt act for the conspiracy.

[19] Even so, Dorsey's observations do not establish double jeopardy, as both convictions required additional evidence. The conspiracy required evidence of an agreement between Dorsey and Poppie to commit robbery as well an overt act by one or both of them in furtherance of the agreement. *See* Ind. Code § 35-

41-5-2. On the other hand, the felony murder did not require an agreement between coconspirators but did require a killing during the attempted robbery. *See* Ind. Code § 35-42-1-1(2). As the State put it to the jury, "the conspiracy to commit robbery was done by the time they made the agreement and they walked across the street and they had their guns." *Id*. at 58; *see Sullivan v. State*, 77 N.E.3d 187, 192 (Ind. Ct. App. 2017) ("The crime of conspiracy is complete upon the agreement and the performance of the overt act."), *trans. denied*. Thereafter, during the course of the subsequent botched robbery, Poppie was shot and killed, constituting felony murder. The fact that the jury was permitted to consider the same facts for the overt act supporting the conspiracy as for the substantial step for the attempted robbery is of no moment.[2] While Dorsey could not have been convicted of both conspiracy to commit robbery and attempted robbery on these facts, he most certainly could be convicted of conspiracy and felony murder without violating the actual evidence test. *See Sullivan*, 77 N.E.3d at 192 ("As long as each conviction requires proof of at least one unique evidentiary fact, the convictions are not barred by double jeopardy.").

### 3. Sufficiency

---

[2] A defendant may be convicted of both conspiracy to commit a felony and commission of the underlying felony except "where the same evidence used to prove the overt act committed in furtherance of the conspiracy also proves the commission of the underlying crime." *Johnson v. State*, 749 N.E.2d 1103, 1108 (Ind. 2001). Here, the overt act of going to the trap house while armed with a handgun with the intent to rob did not also prove the commission of the felony murder. Evidence of a killing during the robbery or attempted robbery was still required.

[20] Dorsey challenges the sufficiency of the evidence supporting both of his convictions. Our standard of review in this regard is well settled. "Convictions should be affirmed unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *T.H. v. State*, 92 N.E.3d 624, 626 (Ind. 2018). Thus, when reviewing the sufficiency of the evidence on appeal, we must consider only the probative evidence and reasonable inferences supporting the conviction, and we should not assess witness credibility or weigh the evidence. *See Moore v. State*, 27 N.E.3d 749, 754 (Ind. 2015). The trier of fact is entitled to determine which version of the incident to credit by resolving conflicts in the evidence and deciding which witnesses to believe or disbelieve. *See Murray v. State*, 761 N.E.2d 406, 409 (Ind. 2002); *Scott v. State*, 867 N.E.2d 690, 695 (Ind. Ct. App. 2007), *trans. denied*.

[21] With respect to the conspiracy conviction, Dorsey argues that the State failed to prove that there was an agreement between himself and Poppie to commit robbery.[3] We cannot agree. The evidence favorable to the verdict establishes that after J-Bob returned from the trap house with marijuana he informed the group that "Jag was the only one over there at the house." *Transcript Vol. II* at 139. Dorsey responded, "We should go over there and rob him." *Id*. at 140. At some point thereafter, Poppie said, "Let's go hit a lick." *Id*. at 208. Dorsey

---

[3] To convict Dorsey of conspiracy to rob Jagger, the State was required to prove that: (1) with the intent to commit robbery, (2) Dorsey agreed with another person (that is, Poppie) to commit robbery and (3) an overt act in furtherance of the agreement was performed. *See* I.C. § 35-41-5-2. Dorsey's sufficiency challenge is based on the second element only.

and Poppie, along with DB, eventually left together and walked over to the trap house. Dorsey and Poppie were armed when they entered Jagger's apartment at the trap house. Taken together, this evidence amply supports a finding that Poppie and Dorsey formed an agreement to commit robbery. *See Fry v. State*, 748 N.E.2d 369, 374 (Ind. 2001) ("In proving the agreement element, the State is not required to show an express formal agreement, and proof of the conspiracy may rest entirely on circumstantial evidence.").

[22] For the felony murder conviction, Dorsey contends that there was insufficient evidence to establish that Poppie was killed during the commission of a robbery or attempted robbery because "the three men … were not wearing masks and upon entering the home immediately began shooting." *Appellant's Brief* at 17. He notes that Jagger did not testify that any of the men demanded or took property from him upon entering the apartment. Additionally, Dorsey challenges Jagger's testimony as incredibly dubious and argues that it should not be credited.

[23] We reject Dorsey's invitation to reweigh the evidence and to judge Jagger's credibility. Initially, we find application of the incredible dubiosity rule improper here. "Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002). The rule "requires that there be: 1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence." *Moore v. State*, 27 N.E.3d 749,

756 (Ind. 2015). In the instant case, Jagger was not the sole testifying witness, his testimony was supported at least in part by circumstantial evidence, and Dorsey does not allege on appeal that Jagger's testimony was *inherently* contradictory, equivocal, or the result of coercion. Dorsey simply argues that Jagger's testimony was "improbable and inconsistent with the forensic evidence." *Appellant's Brief* at 19. We do not agree that the forensic evidence was necessarily inconsistent with Jagger's account[4] but, regardless, such an inconsistency would not support a claim of incredible dubiosity. The jury was entitled to weigh Jagger's testimony along with that of several other witnesses and a mountain of forensic evidence to determine what occurred at the scene. *See Moore*, 27 N.E.3d at 760 (where the incredible dubiosity factors are not present, it would be inappropriate for appellate court to impinge on the jury's responsibility to judge the credibility of witness); *see also Gantt v. State*, 825 N.E.2d 874, 878 (Ind. Ct. App. 2005) (as the sole judge of the credibility of witnesses, the jury may choose to believe only parts of a witness's testimony or "believe the testimony but also believe in a different interpretation of the facts than that espoused by the witnesses").

[24] The evidence favorable to the felony murder conviction establishes that Dorsey and Poppie, along with DB, went to the trap house intending to rob Jagger,

---

[4] Dorsey asserts that the evidence establishes that he only used handgun E-1, which was jammed and not linked to any of the casings or projectiles recovered from the scene. While E-2 and E-3 appear to have been the only handguns successfully fired at the scene, the evidence suggests that Dorsey may very well have also used E-2 (which also eventually jammed) to fire at Jagger while Jagger used E-3, which he took from Poppie.

who possessed marijuana and cash. Pellot and Bratcher understood that to be their purpose. Shortly after the men left for the trap house armed with handguns, Pellot heard the gunshots. Indeed, Dorsey and Poppie had entered Jagger's home, asked about the presence of another individual, and then shot Jagger in the leg. A firefight ensued as Jagger, rather than backing down, fought Poppie for his handgun. All three individuals inside the residence were shot, with Poppie dying on the scene from multiple gunshot wounds. The State presented sufficient evidence from which the jury could infer that Poppie was killed during his and Dorsey's attempted commission of a robbery.

### 4. Sentence

Finally, Dorsey contends that his aggregate sentence of eighty-seven and one-half years is inappropriate. We may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find the sentence inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id*. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id*. at 1224. Deference to the trial court "prevail[s] unless overcome by compelling

evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). The burden is on the defendant to persuade us his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[26] For murder, Dorsey faced a sentencing range of forty-five to sixty-five years, with the advisory sentence being fifty-five years. Ind. Code § 35-50-2-3(a). The trial court imposed an aggravated sentence of sixty years but ordered five of those years suspended to probation, resulting in an executed sentence commensurate to the advisory sentence. For Level 2 felony conspiracy to commit robbery, Dorsey faced a sentence of between ten and thirty years, with the advisory sentence being seventeen and one-half years. I.C. § 35-50-2-4.5. The trial court imposed an aggravated sentence of twenty-seven and one-half years with five years suspended to probation. The trial court ordered the sentences to be served consecutively for an aggregate sentence of eighty-seven and one-half years with ten of those years suspended to probation.

[27] "The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation." *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). On appeal, Dorsey describes his actions as reckless behavior of a nineteen-year-old. We cannot agree. Dorsey initiated the plan to rob the trap house after learning that Jagger was alone in the middle of the night. He and his coconspirator(s) then went there armed with multiple

handguns, and upon entering, Dorsey and Poppie pulled out their guns and Dorsey shot Jagger in the leg, breaking his femur. The scene turned into a war zone when Jagger fought Poppie for his weapon as Dorsey continued to fire shots at Jagger. In all, Poppie and Jagger were shot multiple times and Dorsey was shot once in the leg. There likely would have been more shots fired if two of the handguns had not jammed during the gunfight, and other people could have been injured by the bullets that penetrated the door and struck objects outside of the house. Dorsey fled from the scene, leaving his friend Poppie to die and Jagger with serious injuries, including a gunshot wound to the face. Dorsey then eventually made his way to Indianapolis to hide from police.

[28] In sum, Dorsey's behavior was far from reckless. As the State aptly puts it, Dorsey was the leader of the conspiracy, and he was prepared to engage in violent criminal activity at a moment's notice. Though he did not intentionally kill Poppie, it was clearly foreseeable that an armed robbery of a drug house could erupt in violence and result in death. Further, after Dorsey's gun jammed and Poppie had been shot multiple times, Dorsey's response was to flee the scene without seeking medical assistance for his friend. The nature of Dorsey's offenses, which resulted in two victims, is particularly aggravating.

[29] "The character of the offender is found in what we learn of the offender's life and conduct." *Croy*, 953 N.E.2d at 664. When considering the character of the offender, "'one relevant fact is the defendant's criminal history,' and '[t]he significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense.'" *Sanders v. State*, 71 N.E.3d

839, 844 (Ind. Ct. App. 2017) (quoting *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied*), *trans. denied*.

[30]     Though only nineteen years old, Dorsey already had a significant history of violating the law. His first delinquency adjudication (2011 truancy) came at the age of thirteen, and he failed to successfully complete probation. In 2013, Dorsey was again adjudicated a delinquent for disorderly conduct (fighting or tumultuous conduct) and placed on "strict and indefinite probation." *Appellant's Appendix Vol. II* at 97. Within a couple months, he violated probation and a warrant was issued for his arrest. He violated probation again a few months later for drug and alcohol use and was placed in the custody of the Juvenile Justice Center. After being released from the Juvenile Justice Center and from probation in May 2014, Dorsey committed another delinquent act in October 2014, resulting in an adjudication based on intimidation and carrying a handgun without a license, a Level 6 felony and Class A misdemeanor, respectively, if committed by an adult. Dorsey violated probation in July 2015 by resisting law enforcement and carrying a handgun without a license, resulting in another delinquency adjudication and commitment to the Indiana Department of Correction with the Community Transition Program upon release. After his release, Dorsey failed to report to the Community Transition Program in December 2015. Following another probation violation in June 2016, he was committed to the St. Joseph County Jail for forty-five days. This violation resulted from him committing Class B misdemeanor false informing, for which he was convicted and sentenced, in

November 2016, to thirty days in jail and 180 days probation. Thereafter, a petition to revoke Dorsey's probation was filed in March 2017 and a warrant for his arrest was issued. Thus, at the time Dorsey committed the instant offenses, he had an active warrant for his arrest out of St. Joseph County for violating probation. He also had a pending charge in Illinois for felony retail theft.

[31] In addition to Dorsey's history of disregard for the law continuing from a young age, we observe that he did not graduate from high school, had been unemployed since the age of sixteen, and has a child for whom he does not pay child support. Further, Dorsey received extensive services resulting from his juvenile adjudications, none of which had any rehabilitative impact on him.

[32] We reiterate that our task on appeal is not to determine whether another sentence might be more appropriate; rather, the inquiry is whether the imposed sentence is inappropriate. *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. Dorsey has failed to persuade us that his sentence is inappropriate in light of the nature of his offenses and his character.

[33] Judgment affirmed.

Kirsch, J. and Vaidik, C.J., concur.